PORCH and others *vs.* FRIES and others.†

1. The power of a guardian over the person and property of an infant ceases at her marriage. From that time such guardianship devolves upon the husband. He can enter upon her property, and permit others to enter upon it, without committing a trespass; he can also make leases voidable by her upon his death, or by his heirs at her death.

2. An acknowledgment by a married infant is void.

† CITED *in Vreeland's Ex'r* v. *Ryno's Ex'r*, 11 *C. E. Gr.* 162; *State* v. *Hulick*, 4 *Vr.* 310.

3. The husband of a married infant cannot sell or dispose of the growing wood or timber on the real estate of his wife.

4. The deed of a married infant is void when it attempts to convey the wood and timber separately, as when it attempts to convey the soil with them standing upon it.

5. By the married women's act (*Nix. Dig.* 503,) in cases coming within the provisions of that act, the husband has, during her life, no interest or estate in the lands of his wife. She can sell them with his assent, and if she so sells and conveys them, she conveys them free from any interest or estate of her husband.

6. That act destroyed the estate of tenancy by the curtesy initiate.

7. The married women's act, although inconsistent with the estate by curtesy initiate, does not defeat the husband's curtesy at the death of the wife, provided she has not aliened her estate before. The act only protects her estate during her life; it does not, at her death, affect the law of succession as to real or personal estate.

8. Neither a husband nor his lessees may commit waste upon lands in which he has only an estate by the curtesy.

9. A lease made by the husband of a married infant of her lands, becomes valid for his life, by the vesting of the estate by curtesy; and the heirs-at-law, being entitled to the reversion, have such privity of estate as will enable them to call the life tenant and his lessees to account for wood and timber cut, as well during the life, as after the death of the infant.

10. Where the husband of a married infant permits the felling of trees upon her lands, or severing any part of her realty, and so the change of the real to personal property for his own benefit, it will retain its character of real property so as to pass to those who would have been entitled to it if not severed.

11. The heirs-at-law are entitled to an account for so much of the timber as has been taken away, and an injunction to restrain the removal of so much as still remains on the land.

---

This cause was argued upon a motion to dissolve the injunction which issued upon the filing of the bill.

*Mr. Nixon* and *Mr. Browning*, in support of the motion.

*Mr. J. Wilson* and *Mr. Bradley*, contra.

THE CHANCELLOR.

The defendant, Samuel F. Fries, on the thirty-first of July, 1861, was married to Martha Porch, then sixteen years old. On the thirteenth of June, 1866, she gave birth to a son, who lived for a few hours, and she died on the twentieth of that month, a few weeks under twenty-one, without having had any other child.   At her marriage she was seized in fee of several tracts of land; and several other tracts descended to her in fee by the death of her brother, William Porch, who died in June, 1864, intestate and without issue, leaving her his only heir-at-law.   In November, 1864, S. F. Fries and his wife, Martha, made two leases to the defendants, John M. Moore and David Wilson Moore, by which they demised, for ten years, some of the tracts of which she was seized at her marriage, and some of the tracts which she inherited from her brother William, with the privilege of cutting off all the wood and timber.   These tracts consisted chiefly of wood and timber land, of which the wood and timber were the principal value.   The considerations of these leases were the sums of eight thousand dollars and two thousand eight hundred dollars respectively, which were paid in cash to Fries, by the lessees.   One tract, known as the one hundred and thirteen acre tract, had on it very young thrifty cedar timber, which could not be cut within the term to advantage; this tract, shortly after the lease, Fries and his wife conveyed to the defendants, J. M. and D. W. Moore, in fee, by a deed duly executed by both, and acknowledged by Mrs. Fries, as required by law for married women.   The defendants, J. M. and D. W. Moore, acting upon these leases, cut and carried away large quantities of the wood and timber standing on these tracts; and, during the last illness of Mrs. Fries, after her recovery was despaired of, being advised that their right to cut might terminate with her life, and that they would be entitled to all wood and timber felled before her death, directed all the men employed by them to confine themselves to felling wood and timber, without cutting it up, or prepar-

ing it for use, that the greatest possible quantity might be felled upon her death. They continued felling after her death, until stopped by the injunction issued in this cause on the seventh day of July last.

The complainants are the heirs-at-law of Martha Fries. They filed their bill against the defendants, to restrain the further cutting of wood and timber, and the removing that already cut, and for an account of what had been taken away. The bill alleges that Martha Fries died without having had issue born alive, and that the defendant, Fries, had no curtesy, or estate whatever, in the premises. The answer, which to this is responsive, states that she had a child that was born alive and lived several hours, and is supported on this point by several affidavits annexed to it. But on this motion, the answer as to this matter is conclusive.

Martha Porch, at her marriage, had a guardian of her person and property, appointed by the Orphans Court; his power ceased by her marriage, it being incompatible with the rights of her husband. *McPherson on Infants* 90; *Mendes* v. *Mendes*, 1 *Ves., sen.*, 91.

· From the marriage, her husband was in the place of her guardian, in the case of herself and her property. He could enter upon her property, and permit others to enter, without committing a trespass; he could, like a guardian, make leases, which at common law were not void, but voidable by her upon his death, or by her heirs at her death; and perhaps, since the married women's act, they could be avoided by her before his death, upon her coming of age. In England, by statute, guardians were permitted to make leases on certain conditions, that would be valid after her majority. 2 *Kent* 130; *Van Doren* v. *Everitt*, 2 *South.* 460; *Snook* v. *Sutton*, 5 *Halst. R.* 133; *Clancy's Rights of Married Women* 168, 170.

But the leases and deed of Mrs. Fries were void. She was both an infant and *feme covert*, and her acknowledgment, by the very terms of the act authorizing acknowledgments, was

of no effect. *Nix. Dig.* 131, § 4.* And both the opinion and decision in the Supreme Court and Court of Errors, in this state, in *Ross* v. *Adams,* 4 *Dutcher* 160, and 1 *Vroom* 505, are upon the ground that a mortgage executed by Mrs. Adams, while under age, jointly with her husband, to Ross, although acknowledged in due form, was void. In both courts, the interest of the money was adjudged to her for her life. *Sandford* v. *McLean,* 3 *Paige* 117; *Stamper* v. *Barker,* 5 *Madd.* 157.

The growing wood and timber on these lands were part of the realty, and the right to it is an interest in the land, which the guardian of an infant, or the husband of a married infant cannot, as her guardian, sell or dispose of. The courts, in certain cases, are authorized to direct either the land, or the wood and timber, to be sold by the guardian. And the deed of a married infant is void when it attempts to convey the wood and timber separately, as when it attempts to convey the soil with them standing upon it. *Liford's case,* 11 *Rep.* 46; *Green* v. *Armstrong,* 1 *Denio* 550; *McIntyre* v. *Barnard,* 1 *Sandf. C. R.* 52.

By the married women's act of March 25th, 1852, (*Nix. Dig.* 503),† in cases coming within the provisions of that act, the husband has, during her life, no interest or estate in the lands of his wife. She holds them to her separate use as if she were a *feme sole,* free from his control. She can sell them with his assent, and if she so sells and conveys them, she conveys them as she holds them, free from any interest or estate of her husband.

At common law, the death of the wife was necessary to the estate by curtesy. It is one of the four requisites laid down in the authorities on the subject. But upon the birth of a child, another anomalous estate was created, called tenancy by the curtesy initiate. It was the increasing the estate for their joint lives, which he held before in his wife's lands, into an estate for his own life. The married women's act, as it prevented his acquiring any interest in his wife's estate during her life, destroyed the estate of tenancy by the

---

* *Rev.,* p. 154, sec. 9.   † *Rev.,* p. 636.

curtesy initiate. *Thurber* v. *Townsend*, 22 *N. Y. Rep.* 517; *Billings* v. *Baker*, 28 *Barb.* 343; *Hurd* v. *Cass*, 9 *Barb.* 366; *Sleight* v. *Read*, 18 *Barb.* 169; *Ross* v. *Adams*, 4 *Dutcher* 160.

The better opinion, and the weight of authority, is that this act, although inconsistent with the estate by curtesy initiate, does not defeat the husband's curtesy at the death of the wife, provided she has not aliened her estate before. The act only protects her estate during her life; it does not, at her death, affect the law of succession as to real or personal estate. *Ross* v. *Adams*, 4 *Dutcher* 160; *Naylor* v. *Field*, 5 *Dutcher* 292; *Van Note* v. *Downey*, 4 *Dutcher* 219; *Hurd* v. *Cass*, 9 *Barb.* 366; *Clark* v. *Clark*, 24 *Barb.* 581; *Vallance* v. *Bausch*, 28 *Barb.* 642; *Morgan* v. *Morgan*, 5 *Madd.* 248.

The only authority to the contrary that I find, is in the reasoning and two opinions of Potter, J., in the case of *Billings* v. *Baker*, 28 *Barb.* 343. This point was not that on which the decision turned. The question was on a motion in a partition suit, to strike out the name of the husband of one of the tenants in common. It turned on the question whether the husband had, in the life of his wife, any interest in the lands such as to make him a proper party to a bill in partition. Three of the four judges concurred, Potter being one, that he had no such interest. Which opinion is doubtless correct. But the case does not show whether they concurred in his views as to the husband's title to curtesy at the death of his wife, a question not there raised.

The effect of these views upon the present case is, that Fries, as husband, had no estate in his wife's lands during her life, and that, upon her death, he became entitled to a life estate in the whole, as tenant by the curtesy. The view that I shall take of the case will render it immaterial to consider the question raised here and elsewhere, and not yet settled in this state, upon the construction of the third section of the married women's act, whether she is thereby authorized to hold all her estates to her separate use as a *feme sole*, or only those acquired in the manner specified in that section.

As an estate by the curtesy is only an estate for life, the husband or his lessees are not entitled to commit waste. And cutting off all the wood and timber standing on lands is clearly waste. Upon the final hearing of the case, it may appear that some part of this wood and timber may be cut in the usual course of enjoyment of such land, and without impairing its value, but at this stage of the case the injunction against all further cutting must stand.

So also as to the wood and timber cut since the death of Martha Fries, and now upon the land; that must be accounted for, and the injunction must remain. The lease from Fries, whether valid in the life of his wife or not, became valid for his life by the vesting of the estate by curtesy; and the heirs-at-law, being entitled to the reversion, have such privity of estate as will enable them to call the life tenant and his sub-tenants to account for waste. They were not trespassers.

The question as to the timber cut during her life is a more difficult one. The settled rule is that when timber is felled by trespassers, it vests as personal property in the owner of the fee, and at his death goes to his personal representatives, not to his heirs; and the same result follows when it is cut by a tenant for life or less estate, it vests as personal property in the reversioner. *Bewick* v. *Whitfield*, 3 *P. W.* 267.

This rule would clearly have vested the title to all wood cut in the life of Mrs. Fries in her, as personal property, and at her death it would go to her husband, by his marital right. It would be the same whether the Moores were there as trespassers, or under a lease valid to give possession until avoided.

But in this case the leases were valid to give the possession until avoided, and they were not avoided in the lifetime of Mrs. Fries; in fact, they are valid yet to give possession of the lands, for which only they were valid in her life; they gave no right to cut wood or timber. The waste then, was committed by the husband and quasi-guardian of an infant's estate, and those acting under him, without her legal consent, and there-

fore against her will. The effect of it was, and no doubt in this case the object and design of it was, to convert real estate into personal, and change the descent of it at her death, for the benefit of the husband, and to the injury of her and her heirs. In her life she could have no remedy against her husband, at least before the married women's act, nor could her heirs. Under these circumstances, it would be inequitable and against conscience to allow a husband, while he stood in the place of a guardian to protect her property, to profit by such a breach of trust and confidence, and to change the nature of the property for his own advantage, in a manner that his wife was, by law, unable to do by parol, deed, or will.

Accordingly, courts of equity, always averse to allowing the property of infants to be changed from real to personal, or the reverse, have held, where the person entrusted with the possession or custody of the property is the one who is benefited by the change, that felling trees, or severing any part of the realty, does not change it from real to personal property for his benefit, but that it retains its character of real property, so as to pass to the same persons who would have been entitled to it if not severed.

This was so held by Sir Thomas Clark, in *Tullit* v. *Tullit*, reported in *Ambler* 370. In that case, timber was cut by the mother and guardian of an infant owner of the fee. She was ordered to account, and the money was invested to attend the inheritance. The same was held in *Mason* v. *Mason*, referred to in that case from *Lib. Reg.* in 1724. So also in the case of *Williams* v. *Bolton*, referred to in a note to 3 *P. W.* 268, and decided in 1784. *Tullit* v. *Tullit* was a leading case, and has been followed since in the English Court of Chancery. *Powlett* v. *Duchess of Bolton*, 3 *Ves.* 274; *Ware* v. *Polhill*, 11 *Ves.* 278. Justice Story, in 2 *Eq. Jur.*, § 1357, lays it down as the settled rule of the court.

This doctrine accords with the provisions of the statutes of this state. The act of 1855, relating to abatement of actions, (*Nix. Dig.* 4, § 15,*) gives to the executors and ad-

---

* *Rev.*, p. 396, sec. 4.

ministrators, actions for *trespass* done to the real property of the decedent in his life ; and the act for the prevention of waste (*Nix. Dig.* 908, § 6,*) expressly enacts, that every heir shall recover " for waste and destruction made in houses, lands, or tenements, of his or her inheritance, as well in the time of his or her ancestor, as at any other time after the inheritance descended or come to him or her." Whether, by the construction of the third section of the married women's act, Fries had, in the life of his wife, an estate in her land, or only had its control as her husband or quasi-guardian, he was in possession by right, and is accountable for waste, and was not a mere trespasser. All timber cut by him or his tenants, the Moores, during the life of his wife, retained its quality of real estate, and descended to the complainants. For what the defendants have taken away they must account, and the injunction must be retained as to the part on the premises.

The motion to dissolve must be denied.