## The case of DAMON, *alias* FLINT.

On the trial of an indictment for bigamy, oral proof of the official character of the minister or magistrate before whom the marriage was solemnized, is, *prima facie*, sufficient evidence of his authority.

Under the laws of Massachusetts, as they existed in 1805, a marriage between parties competent to contract, and solemnized by a person duly authorized, is to be considered legal and binding ; without any evidence of the publication of banns, or of the consent of the parent or guardian of the party within age.

If an indictment for an offence against the statutes of Massachusetts, committed before the separation of Maine, does not charge the offence to have been committed against the peace of Massachusetts, and the laws of that Commonwealth, the omission will be fatal.

In this case the defendant was indicted for that he, having been lawfully married at *Reading* in Massachusetts, in 1805, was unlawfully again married to another woman, at *Farmington* in this county, in 1812, the former wife being still alive ; " against the peace of said State, and against the form of the statute in such case made and provided."

In proof of the first marriage, a witness testified that he was present at its solemnization ; which was by the Rev. Mr. *Stone*, a clergyman who had been a settled minister in the town forty years ; that the defendant was then a minor ; that his mother was living ; and that he had previous to the marriage lived at service with a farmer in that town. The sufficiency of this evidence was objected to by his counsel, but the objection was overruled by *Weston J.* before whom the trial was had.

The second marriage was proved by the testimony of a witness who was present when it was solemnized, before *Benjamin Whittier*, Esq. a Justice of the peace in this county, who had often acted in that capacity ; but of whose authority no other evidence was produced, except a copy of his certificate of the marriage, recorded on the town records, and certified by the town clerk. This also was objected to, as insufficient ; but the objection was overruled. It was further urged by the counsel for the defendant, that the offence

should have been charged as done against the peace of the Commonwealth of *Massachusetts*. This point the Judge ruled, *pro hac vice*, against him; reserving it with the others, for the consideration of the court, in case the jury should convict him; which they did.

The defendant moved for a new trial, because, 1st. there was no sufficient evidence of the authority of the clergyman or magistrate to solemnize marriages; 2d. there was no evidence of publication of banns; 3d. nor of the consent of the defendant's parent or master, he being a minor at the time of the first marriage; 4th. the indictment was defective.

It was submitted without argument, by the *Attorney General* for the State; and *Sprague*, for the defendant; and the opinion of the Court was delivered by

PARRIS J. It is incumbent on the Government to prove that the defendant had been legally married previous to the marriage in 1812, whereby he became incapable, in law, of contracting a second time during the continuance of the first contract. The mere reputation of a marriage, or proof of cohabitation, or other circumstances from which a marriage may be inferred, and which are sufficient in almost all civil personal actions, cannot, in cases of this nature, be admissible. There must be evidence of a marriage in fact, by a person legally authorized, and between parties legally competent to contract. Proof of such a marriage may be made either by an official copy of the record, accompanied by such evidence as will satisfy the jury of the identity of the parties, or by the testimony of one who was present at the ceremony. But it is not necessary that the special or official character of the person by whom the rite was solemnized, should be proved by record evidence of his ordination or appointment. Oral proof of his having previously acted in that capacity, affords a presumption that he acted legally, and is *prima facie* evidence of his authority. "Proof, by witnesses who saw the marriage, is *prima facie* sufficient, and whoever would impeach it, must shew wherein it is irregular." 2 *Dane's Abr. ch. 45, art. 3 sec.* 4. "If it appears there has been a marriage in fact, either by town or parish certificates, or by a witness present, that saw the parties

Damon's case.

stand up and go through the usual ceremonies of marriage, directed by one who usually, or appeared usually to marry persons, the court will presume it was a legal marriage till the contrary is proved"— *ibid. sect.* 18. The same principle was recognized by all the Judges in *Westminster Hall*, in *Gordon's* case, and also in *Berryman v. Wise*, and *Rex v. Verelst*, 3 *Camp.* 433 ; and even in cases of mur- der of officers, *Story J.* says in *United States v. Amedy*, 11 *Wheat.* 409, " it is not necessary to prove that they are officers, by produc- ing their commissions. It is sufficient to shew that they act *de facto* as such." The objection that there was no sufficient evidence of the authority of *Stone* and *Whittier* to solemnize marriages, there- fore fails.

The next objection to the verdict is, that there was no evidence of publication of intentions, previous to the marriage. The first section of the statute of *Massachusetts* of 1786, *ch.* 3, for the or- derly solemnization of marriages, under which this marriage took place, provides, " that every stated and ordained minister of the gos- pel in the town, &c. where he resides, is authorized and empowered to solemnize marriages between persons that may lawfully enter into that relation, when one or both of the persons to be married are in- habitants of, or residents in the town where such minister resides." The subsequent sections point out the mode of publication, and make it penal for any minister to join persons in marriage otherwise than is allowed and authorized by said acts. Did the validity of the marriage depend upon the previous publication of the banns, proof that it was solemnized by a person legally authorized thereto, might, in the absence of all other proof, be sufficient to raise the presumption that the requisite preparatory steps had been complied with. 3 *Stark. on Ev.* 1250. Even in the English courts, where a marriage without publication or license is now void by statute, proof of publication is not necessary. It is stated in 2 *Phill. Ev.* 148, that " if the marriage is proved, as it may be, by a witness who attended at the ceremony, it does not appear necessary to prove, in addition, the publication of banns, or a license of marriage. It seems not unreasonable to presume, from the fact of the marriage, that it has been duly solemnized, as the solemnization of marriage

without either a license or a publication of banns is so highly penal."

That the validity of the marriage does not, however, depend upon proof of the publication, and that even an omission to publish would not render it void, is evident from the subsequent provisions of the statute of *Massachusetts*, above referred to, and of others upon the same subject. The 1st and 3d sections of the act of 1786, direct the mode of publication, and the officer by whom the ceremony shall be solemnized, but the marriage is no where declared void upon a failure to publish. There are, indeed, penalties for marrying without publishing, but they are penalties of a pecuniary character, and fall upon the officer and not upon the parties ; while marriages, entered into contrary to the provisions of the 7th *sect.* are declared " absolutely null and void." The inference is strong, that it was not intended that a non compliance with the provisions of the law requiring the publication of banns should, of itself, nullify the marriage contract.

So by the 1st section of the act regulating marriage and divorce 1785, *ch.* 86, marriages within the degrees are prohibited and declared " null and void ;" and by the 2d section all marriages, where either of the parties have a former husband or wife living, are likewise declared to be " absolutely void." So also, by the 5th section of the act under which this indictment is prosecuted, marriages within the age of consent are considered void. It is, therefore, to be inferred that wherever the legislature intended the marriage should be the void, it so expressly provided ; as is the case in the English marriage act, 26 *Geo.* 2 *ch.* 33, which expressly declares, that " all marriages solemnized without publication of banns or license of marriage shall be null and void to all intents and purposes whatsoever." We are, therefore, satisfied that, under the laws of Massachusetts, as they existed in 1805, a marriage between parties competent to contract, and solemnized by a person duly authorized, is to be considered legal and binding without any evidence of publication of banns.

The objection that there was no evidence of the consent of the defendant's parent or master to the first marriage, he being, at that time, under twenty one years of age, rests on the same ground. It is penal for a magistrate or minister to join in marriage a male under

the age of twenty one years, or a female under eighteen, unless the consent of the parent, guardian or other person whose immediate care and government such party is under, if within the State, be first had to such marriage. But the marriage is not void, unless, as is provided in the 5th section of the act against poligamy, &c. it is between parties within the age of consent, which, at the time of framing the statute, was well understood at the common law, to be fourteen in males. *Co. Litt.* 79. " By the common law, if the parties themselves were of the age of consent, there wanted no other circumstance to make the marriage valid." 1 *Black. Com.* 463. It was said by *Parsons C. J.* in delivering the opinion of the court in *Milford v. Worcester*, 7 *Mass.* 54, " When a justice or minister shall solemnize a marriage between parties who may lawfully marry, although without publication of the banns of marriage, and without the consent of the parents or guardians, such marriage would unquestionably be lawful, although the officer would incur the penalty of fifty pounds for a breach of his duty."

The only remaining question, presented in this case, is as to the sufficiency of the indictment. The case finds that the second marriage of the defendant was in this county, in 1812. Supposing it to have been proved or admitted at the trial, that at the time of the second marriage the first wife was alive, (and this fact must necessarily have been established to the satisfaction of the jury) the offence set forth in the indictment was committed at that time, and consequently against the peace of the then existing government and the laws thereof. It could not have been an offence against the peace of the State of Maine, or in violation of its laws, for at that time Maine had not been invested with the sovereign power of a State. The territory was a portion of Massachusetts, and the inhabitants were amenable to the laws of that sovereignty.

Whoever commits an offence, indictable either by statute or at common law, is guilty of a breach of the peace of that government which exercises jurisdiction, for the time being, over the place where such offence is committed ; and, in setting forth the offence, an omission to charge it as having been done against the peace of that government is fatal. The *Queen v. Lane*, 3 *Salk.* 199 ; 2 *Ld Ray-*

*mond,* 1034. It is even insufficient, if charged as against the peace generally, without naming the particular sovereignty, whose peace is alleged to have been violated. *2 Hale's P. C.* 188. So also, if it be an offence created by statute, as in this case, the indictment must allege it to have been committed against the form of the statute, or it will be fatal. *2 Mass. Rep.* 116.

Now it would be preposterous to allege the offence to have been committed against a statute of the State of Maine; for at that time Maine had no statutes, and the statute touching this subject, which has since been enacted by our legislature, is materially different, especially in the penal part, from the statute of Massachusetts.

As the indictment, in this case, sets forth a statute offence committed in the year 1812, by a person subject to the laws of Massachusetts, in a place then under the jurisdiction of that government, it consequently must have been against the peace of that sovereignty and that only; and not being so alleged, the prosecution cannot be sustained. The authorities by which our opinion on this point is supported, are *2 Hale's P. C.* 188; *2 Hawk. ch.* 25, *sect.* 95; *Yelv.* 66; *4 Com. Dig. Indictment, G.* 6, and *Rex v. Lookup, 3 Burr.* 1903. In the latter case, *Lookup* was indicted for perjury. The fact was charged to have been committed in the time of the late king, whereas the indictment concluded against the peace of the present king. After trial, conviction and sentence, *Lookup* brought a writ of error returnable in parliament, when the following question was put by the lords to the judges—" whether the perjury being alleged in the indictment to have been committed in the time of the late king, and charged to be against the peace of the now king is fatal, and renders the indictment insufficient." The Lord Baron delivered the unanimous opinion of the judges in the affirmative; and upon this point, the judgment of the king's bench was reversed and the defendant discharged.

Conformably to the report of the judge, who tried the cause, the verdict must be set aside and a new trial granted.