EVELINE VERONA SMITH v. ANDREW J. SMITH ET AL.

1. It is not good cause for challenge to the array that one of the jurors struck for the trial was dead, another an exempt fireman and another not regularly summoned. Where there is no allegation that there was design or collusion for the purpose of affecting the trial, or that the defendants were prejudiced, the statute gives ample protection for such defects or omissions by an award of tales to fill the panel.

2. In an action for dower, the demandant is a competent witness against the devisees under the testator's will.

3. The marriage in this case was valid under the statute of Massachusetts, which makes an informal marriage valid, where it is consummated with the full belief on the part of the persons so married, *or either of them*, that they have been lawfully joined in marriage.

4. Subsequent cohabitation in the State of Vermont, the place of domicile, is competent and corroborative proof of such marriage.

5. A marriage celebrated according to rites and ceremonies recognized by the laws of the country where the marriage takes place, is valid everywhere, with some approved exceptions.

6. The silence of the demandant, after knowledge of her husband's reputed marriage with another, may affect the *bona fides* and intent of her previous cohabitation.

7. Conveyances made by the testator with another named as his wife, are not evidences against the demandant, who was not a party and is not shown to have knowledge of them. Neither can witnesses be examined to show the contents of a certificate of marriage by the husband to another.

On error to the Supreme Court in an action for dower.

For the plaintiff, *Joseph H. Gaskill, Samuel H. Grey* and *Cortlandt Parker.*

For the defendants, *Mark R. Sooy* and *Barker Gummere.*

The plaintiff claims as widow of Hezekiah B. Smith, deceased, late of the county of Burlington; the defendants, "H. B. Smith Machine Company," are lessees, and the other defendants devisees in fee, and trustees under the will, for establishing and conducting a school for apprentices and young mechanics.

The lands in controversy are at Smithville, in Burlington county. The issues of fact were found in favor of the demandant, and exceptions in law are brought up by the writ of error.

The opinion of the court was delivered by

SCUDDER, J. This case was tried by a struck jury, and at the trial there was a written challenge to the array because one of the forty-eight jurymen selected by the judge was dead, another was a fireman, exempt by law, and a third, whose name was on the panel of twenty-four jurors struck for the trial, was not summoned. The challenge was overruled and an exception taken. There was no objection to the jury until the trial was called. Had the attention of the court been directed to these particular cases before that time, other names might have been supplied, or any omission of duty on the part of the summoning officer corrected. There is no allegation that there was any design or collusion for the purpose of affecting the trial or that the defendants were prejudiced, and

the statute makes ample provision for the required number of jurymen by an award of tales to call others until the panel is filled for the trial. *State* v. *Patterson,* 19 *Vroom* 381 ; *King* v. *Hunt,* 4 *Barn. & Ald.* 430.

There was no error in the ruling of the court on this challenge.

The principal cause of error assigned, relates to the marriage of the demandant and Hezekiah B. Smith.

The proof of marriage was based on two propositions—an actual marriage at Charlestown, in the State of Massachusetts, whither the parties had gone for that purpose, and their future cohabitation and recognition in the State of Vermont, the domicile of both before and after the alleged marriage. As the issue was whether the demandant and Hezekiah B. Smith were ever lawfully joined in matrimony, the evidence was properly received on both parts of the case to show a valid marriage, if either or both were legal proof of marriage where the alleged marriage took place, or at their place of residence. It seems, however, that in this case the fact of marriage depends more strictly on the actual marriage which it is claimed was contracted in the State of Massachusetts, followed by cohabitation and reputation in Vermont, as corroborating evidence of such marriage, rather than on these consequences as independent proof of marriage in the State of Vermont. The demandant stands on the first contention, and must there stand to make her proofs consistent ; and it is not material that the following cohabitation and reputation would of themselves be independent proof of marriage, if there were no other. The case does not properly call for such adjudication, and, if it was so used at the trial, it was immaterial, if there was legal proof of an actual marriage followed by long continued cohabitation and reputation to sustain it. After the lapse of many years slight proof of an actual marriage followed by long continued living together as man and wife, is often the best and only evidence that can be obtained. The direct proof of an actual marriage depends, on the testimony of the demandant herself, supported by evi-

dence of admissions made, afterwards, by Hezekiah B. Smith, that a marriage ceremony had been performed in Boston, but, in one instance denying its legality. The demandant was a competent witness to testify against these defendants, for they are sued as devisees having title to the land under the will, and not as executors and legal representatives. *Crummins* v. *Crummins*, 16 *Stew. Eq.* 86 ; *Hodge* v. *Cowell*, 15 *Vroom* 456 ; *S. C.*, 17 *Id.* 354 ; *Palmateer* v. *Tilton*, 13 *Stew. Eq.* 555.

This testimony was found by the jury to be true, and they based their verdict upon it. Upon the exceptions taken this court must determine whether the marriage was good in law, assuming the facts stated by her to be true.

The story told by the demandant is interesting, and, in her present condition, pathetic. She was born near Woodstock, in the State of Vermont ; moved to that village, where she followed the occupation of a seamstress. In 1843, at that place, she became acquainted with Hezekiah B. Smith. He was then a young mechanic of remarkable inventive talent. They were soon engaged to be married, but their marriage was delayed by his inability to provide a home, and afterwards by a desire to settle up his business and go elsewhere. On April 25th, 1846, he came to her father's house while her parents were absent, said he was ready to go away to be married, persuaded her to go with him. He left a letter behind on a table explaining to her father the cause of their conduct, that they were going away to seek a home and be married. On their way to Woodstock they drove to the house of her uncle Richardson, and there left the same message for her parents. They traveled on to Windsor, Vermont, where she urged that they should be married. He had his trunk and tool chest, and she had her trunk when they arrived there on Saturday. On Sunday he went to get a clergyman, but returned saying they could not be married without giving notice, and said, " We will go to Boston." While they were at the hotel at Windsor, her father and uncle came there in pursuit of them. Smith told them that they were going to Boston, and that he had no idea of anything but marrying

her. They went to Concord the next morning; she remained there while he went to Boston to make arrangements for his business and marriage. He soon came for her. They stopped by the way at Nashua to see a cousin of his; asked him and his wife to go on with them to Boston to see them married, which they declined to do, and then went to the Bunker Hill House, Charlestown. He told her, by the way, that they would be married there by Rev. Mr. Warren, and she accompanied him with that expectation. He went out, returned soon with a man whom he introduced to her, saying, " This is the minister who is to marry us," and said, " Mr. Warren, Miss English." She describes this man as small beside Mr. Smith; about thirty-five years old, nicely dressed, with smooth face, and she supposed he was a clergyman; she thought he was what Mr. Smith represented him to be. He shook hands with her, told them to join their right hands, and then proceeded with the ceremony. He asked Mr. Smith if he would take her to be his lawful wedded wife; he assented. He asked her the same, and she assented. He then pronounced them man and wife. After the ceremony Mr. Warren and Smith went out together; the latter returned alone. They had something to eat, went about the city, and took the night train for Manchester. When walking there with Smith she was introduced by him as his wife to a Mr. White. Both wrote letters to her parents telling them of their marriage. She was introduced to others by him, and they continued to live together as man and wife. She visited his relatives and was visited by them; boarded with them; gave birth to four children, whom he acknowledged as his; he rented a house, paid all the family expenses, and in every way acted and spoke of her and her children as a husband and father should. This continued until 1865—about nineteen years—when he left them at their home at Woodstock, and came to New Jersey. Before leaving he told her she was not legally married to him, conveyed the house where they lived to her by the name of Eveline Verona English, and deposited $200 to her credit in bank, by the same name, and never

returned.   He left the deed to be recorded, but did not tell
her of it; and she drew the money for use, but by permission
of the bank officers used her married name.   Letters written
between them were destroyed by him; the record of their
marriage and the births of their children was cut out of a
family bible, by his sister, about this time.   She afterwards
supported her family without aid from him, and did not fol-
low him because, as she says, she was too poor, and acted by
the advice of counsel learned in the law.   He brought with
him to New Jersey a woman whom he introduced as his wife,
and she lived with him as such, at Smithville, until her
decease, which preceded his.

Upon this statement of facts the question is raised, Whether
this was a valid marriage in Massachusetts.   By the *Rev.
Stat. Mass.* 1836, *ch.* 75, § 24, *p.* 479, it is enacted : " No
marriage solemnized before any person professing to be a
justice of the peace or a minister of the gospel, shall be
deemed or adjudged void, nor shall the validity thereof be
in any way affected, on account of any want of jurisdiction
or authority in such supposed justice of the peace or minister,
or on account of any omission or informality in the manner
of entering the intention of marriage, or in the publication of
the bans; provided the marriage shall be in other respects
lawful, and be consummated with the full belief, on the part
of the persons so married, or either of them, that they have
been lawfully joined in marriage."

This is a most wise and humane statute, intended to meet
such cases as this with which we are now dealing.

It was amended by act of April 27th, 1880, *ch.* 145, § 27,
*p.* 811, by an addition not affecting the present question.

In *Meyers* v. *Pope,* 110 *Mass.* 314, this law was construed,
and the court said : " The policy of the law, as thus expressed,
is strongly opposed to regarding a marriage, entered into in
good faith, believed by one or both of the parties to be legal,
and followed by cohabitation, as void.   The spirit of the statute
would be violated by holding the parties to be fornicators and
the children illegitimate."

See, also, *Commonwealth* v. *Munson,* 127 *Mass.* 459.

Every presumption is in favor of the legality of such marriages, and nothing but prohibitory words in the statute making marriages void for the want of certain forms to be observed, will invalidate them, after consummation. The person who celebrates may be subjected to penalties for violation of the law; but the parties who marry in good faith, and consummate their marriage by cohabitation, in the belief that they are lawfully married, will be adjudged as legally joined in matrimony. *Damon's Case,* 6 *Me.* 148; 1 *Bish. Mar. & D.,* § 283; 1 *Scrib. Dower, ch.* VII., §§ 35, 36.

It is said in a leading case on this subject, *Piers* v. *Piers,* 2 *H. L.* 231, that "the question of the validity of a marriage cannot be tried like any other question of fact, which is independent of presumption, for the law will presume in favor of marriage. This presumption must be met by strong, distinct and satisfactory disproof;" and this is the language of all the cases. 1 *Bish. Mar. & D.,* § 457. Here there is nothing but the cruel assertion of this man to his wife, when he deserted her, that they had not been lawfully married, and this falsehood repeated by him afterwards to others.

It having been thus shown, that by the law of Massachusetts this was a valid marriage between the demandant and Hezekiah B. Smith, the next question presented by the exceptions is, Will this marriage be recognized in New Jersey, where the demand of dower is made.

It was said by this court, in *Harral* v. *Harral,* 12 *Stew. Eq.* 279, 287, that "the doctrine generally adopted and supported by reason and public policy is, that a marriage celebrated according to rites and ceremonies recognized by the laws of the country where the marriage takes place, is valid everywhere." The law of marriage is said to be a part of the *jus gentium,* governed by the *lex loci contractus,* and recognized everywhere in civilized nations, with some exceptions, involving polygamy, incest and probably some other equally heinous crimes against the generally recognized law of marriage, and express prohibitory and invalidating words in a statute.

Certainly it is a law of comity between the different states of this country.

This is the case even where the parties, being residents of one state, for the sake of evading the law, go into another state, where such a marriage is valid, are there married and immediately return and continue their place of residence; the marriage is valid there, and after the husband's death his widow is entitled to dower in his estate. *Putnam* v. *Putnam*, 8 *Pick.* 433; *Medway* v. *Needham*, 16 *Mass.* 157; *Van Voorhis* v. *Brintnall*, 86 *N. Y.* 18; *Moore* v. *Hegeman*, 92 *Id.* 521; *Meister* v. *Moore*, 96 *U. S.* 76; *Ross* v. *Ross*, 129 *Mass.* 243; *Pearson* v. *Howey*, 6 *Halst.* 18, 21; 2 *Kent Com.* 87, 91, 92; *Story Confl. L.*, § 123, &c.; 2 *Greenl. Evid.*, § 460.

There is nothing in our law or any statute of this state which would make such a marriage as this invalid, if performed here, and there is no reason why it should not be here recognized, as entitling the demandant to dower in her deceased husband's land.

The exception made to the exclusion of certain deeds and mortgages executed and delivered by Hezekiah B. Smith and Agnes, his wife, while he was living in New Jersey, is unfounded, for they had no probative force against the demandant, who was not a party to these conveyances, nor shown to have had any knowledge of them. And, for the same reason, the evidence of certain persons to prove that they had seen the certificate of marriage of Agnes, said to have been shown to them by her, was properly rejected. It was not competent for Smith thus to make testimony against his wife, while she was living in a distant state, where he had left her, by proof of specific acts of which she had no knowledge.

The exceptions also taken to the charge of the court, that the silence and non-action of the plaintiff below, during all the period that Mr. Smith lived in New Jersey, and her knowledge of the cohabitation and reputation of himself and Agnes, as man and wife, have no probative force except so far as it affected the *bona fides* and intent of the said Smith and the plaintiff in holding themselves out as man and wife in Massa-

chusetts and Vermont. This was certainly the farthest extent to which this evidence could be used against her, and there is no error in this charge of which the defendants can complain.

He was not misled by the silence of his wife into an unlawful connection with another woman, for not even her consent could make such a relation lawful; it is only evidence so far as it affects the credibility of her statements of their marriage, and the effect to be given to their subsequent cohabitation.

There is no judgment against the H. B. Smith's Company, lessees, on the issue of title, and the verdict was properly taken against them on the issue of marriage. They are not therefore prejudiced, and it is not necessary to determine the kind of estate they have in part of the lands claimed.

These grounds of exception include all the points in the assignments of error which are regarded as of any importance, and the judgment of the court below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, KNAPP, MAGIE, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, SMITH. 12.

*For reversal*—None.