43 N.J. Super. 598 (1957)
129 A.2d 459
SHIRLEY WILKINS, OTHERWISE SHIRLEY ZELICHOWSKI, PLAINTIFF-APPELLANT,
v.
STEPHEN E. ZELICHOWSKI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1957.
Decided February 19, 1957.
*599 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Alan Bruce Conlin argued the cause for the appellant (Mr. H. Frank Pettit, attorney).
No appearance by respondent.
*600 The opinion of the court was delivered by FRANCIS, J.A.D.
The plaintiff sought annulment of her marriage to the defendant under N.J.S. 2A:34-1(e) on the ground that she was under the age of 18 years when the ceremony was performed. The judgment was adverse to her and she appeals.
The record reveals that the plaintiff and defendant, who were residents of New Jersey, went to Indiana for the purpose of being married. They were married there on April 23, 1954 and returned to New Jersey immediately. At that time the wife was 16 years, 11 months and 5 days old, having been born on May 18, 1937. The law of Indiana permitted marriage by a female at 16 years of age. Ind. Ann. Stat. § 44-101 (Burns, 1952).
On returning to this State, they lived together until April 22, 1955 when the husband was sent to the Bordentown Reformatory (where he was still confined at the time of the hearing). This was prior to her eighteenth birthday and the marriage has not been confirmed since that age was attained. She has continued to reside in this State. A child was born to them on February 22, 1955.
The annulment action was instituted on January 4, 1956 and was not contested. However, after hearing the proof and particularly the admitted fact that plaintiff was competent to marry under the Indiana law, the trial court declined to grant the annulment. In order that the question involved might be presented squarely on appeal, the court declared that a favorable judgment, if entered, would be for the best interest of the child. (See the last paragraph of N.J.S. 2A:34-1.)
Plaintiff predicates her claim to relief on N.J.S. 2A:34-1(e) which authorizes an annulment when:
"The demand for such a judgment is by the wife and she was under the age of 18 years at the time of the marriage, unless such marriage be confirmed by her after arriving at such age."
And she contends the statute is controlling because the law of the domicile is applicable to the dissolution of marriage.
*601 At the outset of a consideration of the problem, it must be recalled as a basic general doctrine that the law favors marriage and its continuance and frowns upon dissolution of the status by annulment or divorce. Shaffer v. Shaffer, 129 N.J. Eq. 42, 44 (E. & A. 1941); Bednarik v. Bednarik, 18 N.J. Misc. 633, 653 (Ch. 1940); Di Franco v. Di Franco, 103 N.J. Eq. 529 (Ch. 1928); Keller v. Linsenmyer, 101 N.J. Eq. 664, 674 (Ch. 1927); Feickert v. Feickert, 98 N.J. Eq. 444, 448 (Ch. 1926); Pinkinson v. Pinkinson, 92 N.J. Eq. 669, 672 (E. & A. 1921); 11 N.J. Practice (Herr, Marriage, Divorce and Separation), § 644, at p. 7, § 812, at p. 216, n. 18 (1950).
Marriage is a contract and like other contracts its validity is determined ordinarily by the lex loci contractus. Jordan v. Mohan, 15 N.J. Super. 513 (App. Div. 1951); King v. Klemp, 26 N.J. Misc. 140, 147 (Ch. 1947); Storf v. Papalia, 24 N.J. Misc. 145 (Ch. 1946); Bolmer v. Edsall, 90 N.J. Eq. 299, 306 (Ch. 1919); Smith v. Smith, 52 N.J.L. 207, 213, 214 (E. & A. 1889); Loughran v. Loughran, 292 U.S. 216, 223, 54 S.Ct. 684, 78 L.Ed. 1219, 1223 (1934); Franzen v. E.I. DuPont De Nemours & Co., 146 F.2d 837, 839 (3 Cir. 1944); Restatement, Conflict of Laws, § 121, p. 129 (1934); Goodrich, "Jurisdiction to Annul a Marriage," 32 Harv. L. Rev. 806, 811-814 (1919).
The marriage of the parties was governed and sanctioned by the Indiana statute. That public act and the contract which it vitalized, on principles of comity ought to be regarded as binding in New Jersey unless abhorrent to our public policy. King v. Klemp, supra, 26 N.J. Misc., at p. 151; Smith v. Smith, supra; Bradford Electric Light Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932); Alaska Packers Ass'n v. Industrial Acc. Comm., 294 U.S. 532, 547, 55 S.Ct. 518, 79 L.Ed. 1044 (1935); McDonald v. McDonald, 6 Cal.2d 457, 58 P.2d 163, 104 A.L.R. 1290 (Super. Ct. 1936); Restatement, Conflict of Laws, supra, § 129, p. 132; 2 Beale, Conflict of Laws, sec. 129.1 (1935); Paulsen and Sovern, "`Public Policy' *602 in the Conflict of Laws," 56 Colum. L. Rev. 969, 994-998 (1956).
Is a statute of a foreign state which permits marriage by a female aged 16 years so odious to our public policy as to justify annulment? The statute, N.J.S. 2A:34-1, on which plaintiff depends, ordains that the marriage in this State of a female under the age of 18 years shall be voidable, not void. A judgment of the appropriate court is necessary to terminate it, and such a judgment cannot be obtained if the marriage is confirmed after the eighteenth birthday. Fodor v. Kunie, 92 N.J. Eq. 301 (Ch. 1920); Titsworth v. Titsworth, 78 N.J. Eq. 47 (Ch. 1910); cf. In re De Conza's Estate, 13 N.J. Misc. 41 (Orph. Ct. 1934). Nor does the act expressly provide that marriages under the age prescribed shall be void or even voidable when solemnized in another state which approves them at a lower age. Moreover, it cannot go unnoticed that the Legislature has authorized the issuance of a license to marry to a female under 18 but over 16 years of age, if her parents or guardian consent thereto. N.J.S.A. 37:1-6.
In searching for the nature of the public policy implications of the statute under consideration, a comparison may be made with related legislation. For example, a marriage within certain prohibited degrees of consanguinity is "absolutely void," N.J.S.A. 37:1-1; a bigamous marriage "shall be deemed void ab initio," N.J.S. 2A:34-20; a common law marriage (after 1939) is "absolutely void," N.J.S.A. 37:1-10. These qualitative attitudes vividly reflect policy differences. And in this connection the language of the Court of Errors and Appeals as far back as 1889 is significant on the subject:
"It was said by this court in Harral v. Harral, 39 N.J. Eq. 279, 287, that `the doctrine generally adopted, and supported by reason and public policy, is that a marriage celebrated according to rites and ceremonies recognized by the laws of the country where the marriage takes place is valid everywhere.' The law of marriage is said to be a part of the jus gentium, governed by the lex loci contractus, and recognized everywhere in civilized nations, with some *603 exceptions, involving polygamy, incest, and probably some other equally heinous crimes against the generally recognized law of marriage, and express prohibitory and invalidating words in a statute." Smith v. Smith, supra, at page 213.
And see 1 Bishop, Marriage, Divorce and Separation, 370-386 (1891).
The state of our public policy as to marriages which are valid elsewhere but which would be voidable non-age unions if performed here, may be described as the sum total of the statutory and common law principles outlined above. And in our judgment such a valid foreign marriage is not so odious to that policy as to require a judgment of nullity. The policy cannot be said to be so imperative in character, so strongly indicative of an inflexible and unyielding conviction, that marriage of a female under 18 years of age is universally to be condemned, and such an evil example as to override the well recognized doctrine of comity which calls for acceptance of the status. See for contrast, Watson v. Murray, 23 N.J. Eq. 257, 260 (Ch. 1872), (accounting denied to one of several partners conducting lotteries in states where legal). In expressing this viewpoint, we call attention to the fact that only the statute of Indiana authorizing marriage of a female aged 16 years is being judged.
In the varying situations in which a clash has arisen between conflicting local and foreign policies respecting marriage, the doctrine of comity seems to have received more recognition in non-age cases than in other types of voidable unions. For example, in 2 Beale, op. cit., supra, § 129.3, the following appears:
"By the American law and probably also by the English law, the capacity to enter into any agreement is governed by the law of the place of the contract; capacity, of itself, is merely one of the facts of a transaction and not a status. It is quite natural therefore that, where marriages are concerned, questions of capacity are generally referred to the law of the place of celebration. This rule in no way detracts from the power of the domicil to control the status; it does indicate, however, that in problems of capacity the common law has never found any serious policy which would warrant the *604 nullification of a valid foreign contract by a denial of the marital status.
Consequently, wherever the problem has been presented to the English courts, the validity of a marriage entered into without the consent of the parents has been considered dependent upon the law of the place of marriage. It would seem that the question of non-age should receive the same treatment, and the decisions have usually so indicated."
The California Supreme Court dealt with substantially the same problem in McDonald v. McDonald, supra, as is now presented to us. The parties, residents and domiciliaries of California, validly married in Nevada. The husband's age was 18 years and the wife's 16 at the time. Such a marriage without the consent of the parents was voidable in California. However, annulment was refused, the court saying:
"* * * The Legislature of California has not enacted a statute that such marriages shall have no validity here. In the absence of such a statute of the domicile of the parties, expressly and clearly regulating marriages abroad, the lex loci contractus governs as to the validity of the marriage. An exception, of course, arises when the marriage is regarded as odious by common consent of nations; e.g., where it is polygamous or incestuous by the laws of nature." 58 P.2d., at page 164.
The Supreme Court of Colorado reached a like result. Payne v. Payne, 121 Colo. 212, 214 P.2d 495 (1950). And in both of these cases the fact that the parties had gone into the foreign jurisdiction to take advantage of its more favorable statute and to avoid the local regulation, did not deprive the status of validity. This seems to be the law of New Jersey also, for the court said in Smith v. Smith, supra, in speaking of the validity of the foreign marriage:
"This is the case even when the parties, being residents of one state, for the sake of evading the law go into another state, where such a marriage is valid, are there married, and immediately return and continue their place of residence. The marriage is valid there. * * *." (52 N.J.L., at page 214.)
It is likewise the rule espoused by the Restatement, Conflict of Laws, § 129, and by Bishop, supra, § 880.
*605 Finally, the result reached by us is consonant with the doctrine advocated by the Restatement as a resolution of the conflicting interests of the sovereignties concerned:
"A marriage which is against the law of the state of domicil of either party, though the requirements of the law of the state of celebration have been complied with, will be invalid everywhere in the following cases:
(a) polygamous marriage.
(b) incestuous marriage between persons so closely related that their marriage is contrary to a strong public policy of the domicil.
(c) marriage between persons of different races where such marriages are at the domicil regarded as odious, [It may be noted that the constitutional validity of anti-miscegenation statutes has been questioned. Perez v. Sharp, 32 Cal.2d 711, 198 P.2d 17 (Sup. Ct. 1948).]
(d) marriage of a domiciliary which a statute at the domicil makes void even though celebrated in another state." Section 132.
In support of her thesis that the New Jersey statute grants her the right to an annulment, plaintiff cites: Scularekes v. Gullett, 106 N.J. Eq. 369 (Ch. 1930); Capossa v. Colonna, 95 N.J. Eq. 35 (Ch. 1923); affirmed sub nom. Capasso v. Colonna, 96 N.J. Eq. 385 (E. & A. 1924); Rinaldi v. Rinaldi, 94 N.J. Eq. 14 (Ch. 1922); Jimenez v. Jimenez, 93 N.J. Eq. 257 (Ch. 1922); Bolmer v. Edsall, supra. Although they all contain some language which appears to be favorable to her position, examination reveals that in each instance the voidable marriage of a foreign state or jurisdiction was involved. No one of them brought to our courts for determination the problem of whether a valid marriage of another state can be annulled at the instance of a resident domiciliary party because the marriage would be voidable and subject to annulment, on account of the higher age requirement, if celebrated in New Jersey. For this reason alone the cases cannot be regarded as decisive on the issue confronting us.
Moreover, it cannot escape attention that the first four cases trace back to Bolmer v. Edsall as source material, while the latter predicates the crucial portion of the opinion on 1 Bishop, op. cit., supra, §§ 838, 839, 856. Section 838 says:
*606 "Marriage being a universal right, and there being one law of marriage governing all nations alike, subject only to mere local and not extra-territorial regulations of the State wherein it is celebrated, if, at any place where the parties may be, whether transiently or permanently, they enter into what by the law of the place is a marriage, they will be holden everywhere else throughout Christendom to be husband and wife. * * *."
And section 839:
"More curtly expressed, marriage is, as to its constitution, governed by the lex loci contractus; as to its dissolution by divorce, by the lex domicilii." (Emphasis ours.)
And section 856:
"The result is that, for the peace of the world, for the prosperity of its respective communities, for the well-being of families, for virtue in social life, for good morals, for religion, for everything held dear by the race of man in common, it is necessary there should be one universal rule whereby to determine whether parties are to be regarded as married or not; and that the only practicable rule is to refer this question to the law of the country wherein they exchange the mutual consent to be husband and wife; which consent alone is, by the law of nature, a perfect marriage. If in such country, they are deemed to be married, the tribunals of every other must hold them to be so likewise, or no end can be predicted to the confusion which will ensue. * * *"
The apparent unequivocal character of these statements is qualified later in the work (§ 857-885) so as to give recognition to the qualification that the foreign marriage will be considered valid unless obnoxious to the law of the domicile. Thus, when the cases speak of the law of the domicile being applied in an annulment action, the reference is to this qualification, namely, the issue of whether the marriage is odious to the public policy of the domicile. It does not mean that the result of the action depends upon our statute as to the annulment of marriages performed here, regardless of their validity at the place where in fact celebrated.
In a non-age annulment action, antisocial or criminal conduct of one party to the union as described in the record, *607 which arises after the marriage, cannot influence the course of judicial action. A judgment of nullity can be issued only for an impediment which existed at the time of the contract  as distinguished from divorce which concerns itself with dissolution for a post nuptial delictum.
The judgment is affirmed.