LOUISE DOOLEY, otherwise LOUISE BAUMANN, petitioner,

*v.*

JOSEPH EDWARD DOOLEY, defendant.

[Decided September 22d, 1921.]

1. A suit for nullity of marriage when brought for cause existing at the time the marriage is solemnized, when instituted by a woman, should be in her maiden name, followed by the words *falsely called* * * * or the words *otherwise* * * * (adding the husband's surname); when such a suit is instituted by a man the woman should be called by her maiden name, followed by the words *falsely called* * * * or by the word *otherwise* * * * (adding the husband's surname); however, this defect is of form and not of substance, and the parties being sufficiently identified, there can be no doubt of the validity of the proceedings and decree.

2. An *unconsummated* marriage, which is infected by fraud of a kind which would render any other contract voidable, is voidable at the option of the injured party, if promptly disaffirmed before any. change of status has occurred.

3. What is *sufficient* fraud to avoid such a marriage is the subject of ascertainment in every case in which the complaining spouse alleges that his or her consent was induced by the other's fraud.

4. Defendant represented to petitioner that he was a captain in the United States army; came of a family of wealth and prominence; had been admitted to practice medicine; was honest and of good character; but, as matter of fact, the representations were wholly false; defendant was never a captain in the United States army, but a corporal; was not a member of a family of prominence and wealth, but a social outcast, living on his wits; was not a physician; was not honest or of good character, but was an imposter, traveling under an assumed name; was a forger, a deserter from the United States army.

5. Petitioner discovered this fraud on the day of the wedding; at once repudiated the marriage; has never lived with defendant and never had sexual intercourse with him.—*Held*, on the facts of this case, the marriage being unconsummated, the petitioner is entitled to a decree of nullity. Decree *nisi* accordingly.

6. *Ysern* v. *Horter, 91 N. J. Eq. 189,* followed and applied.

On final hearing in divorce on master's report and depositions *ex parte.*

*Messrs. Clancy & Ellis,* for the petitioner.

WALKER, CHANCELLOR.

Before proceeding to a consideration of the merits of this case, I desire to say that it is not correctly entitled. A suit for nullity of marriage when brought for cause existing at or before the time the marriage is solemnized, when instituted by a woman, should be in her maiden name, followed by the words *falsely called* * * * or by the word *otherwise* * * * (adding the husband's surname.) See *G— v. G—, 67 N. J. Eq. 30* (at *p. 33*). See, also, illustrations at *pp. 35, 36.* When such a suit is instituted by a man the woman should be called by her maiden name, followed by the words *falsely called* * * * or by the word *otherwise* * * * (adding the husband's surname). See *Bolmer* v. *Edsall, 90 N. J. Eq. 299; Turner* v. *Avery, 113 Atl. Rep. 710.* Sometimes the husband's surnames in the titles are al-

together omitted. See *Ysern* v. *Horter, 91 N. J. Eq. 189; Fodor* v. *Kunie, 112 Atl. Rep. 598.* However, this defect is of form and not of substance. The parties being sufficiently identified there can be noi doubt of the validity of the proceedings and decree. The case *sub judice* would properly have been entitled: Louise Baumann, otherwise Dooley, petitioner, *v.* Joseph Edward Dooley, defendant. See the remarks of the author of *Bid. N. J. Div. Pr. (2d ed.) 352.*

Now, as to the meritorious question: The master finds that the petitioner, whose maiden name was Louise Baumann, and the defendant, Joseph Edward Dooley, were lawfully married on May 3d, 1920; that prior to the performance of the marriage ceremony the defendant represented io petitioner and her family and friends that he was a captain in the United States army; that he came of a family of wealth and prominence; that he had been admitted to practice medicine in the State of Pennsylvania, and that he was honest and of good character; that petitioner was induced to enter into the marriage, relying upon the statements of the defendant, but that, as matter of fact, these representations were wholly false; that the defendant was not a captain in the United States army; that he was not a member of a family of prominence and wealth; that he had not been admitted to practice medicine, nor was he honest or of good character, but was a deserter from the United States army; an impostor, and was at the time of the marriage sought for by the authorities of the United States army on two charges, one of having impersonated an officer and the other of having deserted the service of the United States; and that by reason thereof the form of marriage of the petitioner and defendant, because of the said fraud mentioned, was a mere pretence and wholly null and void. And the master further finds and reports that the petitioner and defendant never cohabited as man and wife, and that the marriage was never in fact consummated. The petitioner's residence within the State of New Jersey, so as to clothe this court with jurisdiction in this cause, is also reported.

The proofs annexed to the master's report amply sustain these findings, and they also show that the father and brother of the petitioner, having learned these things, or some of them, imme-

diately after the marriage, became suspicious of the defendant and ordered him from the family residence, in Orange, about seven o'clock on the evening of the day of the wedding. He went, followed by the petitioner's brother. They got into a fight and both were arrested. The brother was bailed out, but the husband remained in jail until taken to Governor's Island a few days afterwards as a prisoner charged with desertion from the United States army. He was tried by court-martial there August 6th, 1920, on two charges (1) for having deserted the service of the United States on January 31st, 1919, being then a corporal, and remaining absent in desertion until apprehended in New Jersey on or about May 4th, 1920, and (2) that being then a corporal, on or about August 1st, 1918, he appeared at Philadelphia in the uniform of a captain of the United States army without proper authority to wear the uniform. He was found guilty of both charges and was sentenced to be confined for two and one-half years at hard labor in disciplinary barracks at Fort Leavenworth, Kansas. The proofs also show that the defendant went under an assumed name, his right name being Kelly. On the morning of the wedding day he forged a check for a considerable amount, for which he might have, but appears not to have been, prosecuted.

The petitioner never lived with, nor has she been alone with, the defendant at any time since the marriage. The proof, therefore, is ample that these parties, petitioner and defendant, never had sexual relations and that the marriage has not been consummated.

In *Ysern* v. *Horter, 91 N. J. Eq. 189,* Vice-Chancellor Stevenson, in an exhaustive and well-considered opinion, lays down, as the law of this state, that—

"An unconsummated marriage, which is infected with fraud of any kind whatsoever, which would render a contract voidable, is voidable at the option of the injured party, if promptly disaffirmed before any change of status has occurred."

And in the opinion (at *p. 198*) the learned vice-chancellor observes:

"The gist of the decision in the *Carris Case* is tersely stated by Chancellor Walker in the case of *Bolmer* v. *Edsall, 90 N. J.*

*Eq. 299, 300,* as follows: "The court of errors and appeals held that the court of chancery, under its general power to annul fraudulent contracts, has jurisdiction to annul a contract of marriage for *sufficient fraud.*' [Italics mine.] What is fraud in respect to the 'essentials' of marriage, or, to use a broader term, what is 'sufficient fraud,' I think remains to-day the subject of ascertainment in every case brought before this court in which the complaining spouse alleges that his or her consent to a marriage was induced by the defendant's fraud."

And, again (at *p. 201*):

"So far as the question has been discussed in reported American cases in other jurisdictions and by the text-writers, I find substantial agreement, to the effect that an unconsummated marriage is little more than an engagement to marry—that there is no reason based on public policy why, for instance, a young girl should be tied forever to an escaped criminal simply because of a ceremony of marriage to which she was induced to consent by a fraudulent representation by her spouse that he was a person of good character, respectable standing in society and of large fortune."

Now, is the fraud in the present case sufficient to move the court to annual the marriage? I think it is. Here a young woman twenty-two years of age consented to marry a man a few years her senior, who represented to her that he was a captain in the United States army, came of a family of wealth and prominence, was a physician, was honest and of good character, when, in fact, these representations were all wholly false. He was for a time in the army, having attained the rank of corporal, a non-commissioned officer, was a deserter from the army, tried by court-martial, found guilty and sentenced to imprisonment at hard labor in a military barracks; was a forger and a social outcast living on his wits. This fraud was discovered on the day of the wedding, and the defendant was thereupon turned away from the petitioner's father's house with her consent. The parties never lived together and never had sexual intercourse; therefore, the marriage not having been consummated a decree of nullity will be granted *nisi. Turney* v. *Avery, 113 Atl. Rep. 710.*

Decree *nisi* accordingly.