This is a suit for nullity of marriage, and attention should be called to the fact that it is not correctly entitled. Dooley v.Dooley, 93 N.J. Eq. 22. As in that case, however, the parties were sufficiently identified, and the case sub judice may be considered.
The parties were married on October 21st, 1926. A child was born on March 26th, 1927. Immediately thereafter the petitioner separated from the defendant and has not lived with nor cohabited with her since that date. *Page 142 
He files his petition for annulment of said marriage, alleging that at the time of said marriage she was pregnant with child, and that she fraudulently concealed said fact from him.
Judge Dill, in Vanderbilt v. Mitchell, 72 N.J. Eq. 910 (atp. 918), states the law as follows:
"In this state, in the leading case of Carris v. Carris,24 N.J. Eq. (9 C.E. Gr.) 516, the court of chancery is declared to have inherent jurisdiction to annul the status of marriage on the ground of fraud, entirely independent of the statute of New Jersey which regulates the subject of marriage and divorce. The same principle was followed by Chancellor Zabriskie in McClurg
v. Terry, 21 N.J. Eq. 225; by Vice-Chancellor Pitney inRooney v. Rooney, 54 N.J. Eq. (9 Dick. Ch. Rep.) 231, and by the present chancellor [the late Chancellor Magie] in Crane
v. Crane, 62 N.J. Eq. (17 Dick. Ch. Rep.) 21.
"In these cases jurisdiction was assumed upon the ground that marriage is a civil contract and that courts of equity have always entertained suits to set aside contracts on the ground of fraud.
"We have referred to the doctrine of the Carris Case, and have cited with approval the McClurg, Rooney and Crane Cases, as illustrating the view which our courts take of the doctrine of equitable jurisdiction as contradistinguished from the narrower English rule.
"The rule of the Carris Case has been generally followed in this country, but in England it has been discussed and squarely rejected. Moss v. Moss, L.R. Prob. (1897), 263."
I am convinced that the husband was not the father of the child, that he had no knowledge or information that she was pregnant with child at the time of the marriage; that he had no sexual relation with her prior to the marriage; and I find as a fact that the petitioner had no opportunity for intercourse with the defendant at the time of the conception of the child or prior thereto.
There can be no question that she did not at any time before marriage tell him of her pregnancy. This is corroborated *Page 143 
by the testimony of those who asked her if she had ever had intercourse with him, and by her statement to her mother in reply to the same question.
It was held in Clickner v. Clickner, 95 N.J. Eq. 479, that: "1. Annulment of marriage on the ground of fraudulent concealment of pregnancy will not be decreed where the evidence does not disprove the possibility that the husband had antenuptial knowledge of facts sufficient to put him on his guard against the contingency of existing pregnancy.
"2. Where a suitor in equity has been guilty of false or misleading testimony and conduct in the prosecution and hearing of his cause his suit will be dismissed irrespective of whether or not he might otherwise be entitled to relief upon what the court finds from all the evidence to be true facts material to the determination of the cause."
It is impossible in a written memorandum to accurately and specifically state the effect of the story of a witness upon the mind of the court. It is sufficient to say that I was impressed that the petitioner was truthful, and that the defendant was not imparting to the court the entire facts in the case.
I believe that she knew that she was pregnant — her talk with Mrs. Johnson was an indication of at least her fear of such being the fact. It is worthy of comment that the birth of the child was at the time of the end of the usual period of gestation, if her condition at the time of her talk with Mrs. Johnson was due to pregnancy. I am convinced that her story of her intercourse with the petitioner is false — it lacks the smack of sincerity and truthfulness. Her statement that each occurrence alleged by her was an act of force cannot be believed, for when asked concerning the occurrence which she alleged happened in Philadelphia, if she made any outcry, she replied: "No, if I had, the whole d____ bunch would have come up." I am not impressed with her story, and do not believe it.
I will advise a decree in accordance with the prayer of the petition. *Page 144