A petition was filed in the above stated cause for the annulment of a marriage. The cause is improperly entitled. If petitioner thinks it was no marriage and that she is entitled to have it annulled, it should be entitled "Belle Riedinger, otherwise Belle Caruso, Petitioner, v. Thomas Caruso, Defendant." However, this defect is of form and not of substance, and the parties being sufficiently identified there can be no doubt of the validity of the proceedings and decree. Dooley v.Dooley, 93 N.J. Eq. 22.
The petitioner alleges that on May 1st, 1926, a form or ceremony of marriage took place between her and the defendant; that on July 16th, 1926, a son was born to her; that defendant at the time of entering into said pretended ceremony of marriage, intended never to consummate it nor to live with petitioner, nor to perform any of the duties of a husband, and intended that said ceremony should be a marriage in name only, and that petitioner should never have or enjoy any of her rights as a wife; that at the time of the performance of the ceremony petitioner believed and expected that the marriage would be in all respects genuine, and that defendant would live with her and would permit her to live with him, that he would maintain a suitable home for her and that they should mutually enjoy all the rights, and perform all the duties of husband and wife, but defendant fraudulently concealed from petitioner until after the performance of the ceremony his then existing intent, as alleged; that immediately following the ceremony the defendant left petitioner and has refused, and still refuses, to live with her or to permit her to live with him, or to perform any of the duties of a husband or to permit her to enjoy any of the rights of a wife; that petitioner would not have entered into said ceremony had she been informed of defendant's intent aforesaid, but that she was induced to marry the defendant by reason of such fraudulent concealment; that the marriage between the petitioner and defendant has never been consummated. *Page 590 
And the petitioner therefore prays that the said marriage may, for the fraud of the defendant, be declared to be null and void, and that petitioner may have such other and further relief as may seem equitable and just.
Petitioner was sworn and testified in part as follows: That she was twenty years of age and had been "going" with the defendant three or four months when they had sexual intercourse together; that she afterwards told defendant that she was pregnant and asked him to marry her; that on the day mentioned they were married, before which defendant promised to make a home for her, but after they were married he came to her mother's home and stayed there about one hour, then left and never returned to her, nor did he write her any letters nor send her any money or clothing; that a boy, Vincent, who was in her custody, was born and was at the time of her deposition two years of age; that her maiden name was Belle Riedinger. Defendant's brother testified that defendant told him before the marriage that he would never live with petitioner, and that his only reason for going through the ceremony was because he "wanted to give the child a name."
The matter of marriage, residence and cause alleged for annulment, also that defendant never returned to, lived with, nor supported petitioner or their child, were corroborated. It is true the petitioner swears that the marriage was never consummated, that is, that there was no copula after the ceremony. As to that hereafter.
In Ysern v. Horter, 91 N.J. Eq. 189, Vice-Chancellor Stevenson held that an unconsummated marriage which is infected with fraud of any kind whatsoever, which would render a contract voidable, is voidable at the option of the injured party, if promptly disaffirmed before any change of status has occurred.
Now, the question recurs, Is the present marriage a consummated or an unconsummated one? There can be no doubt but that the defendant married the petitioner because of the fact that he was responsible for her pregnancy, and, as such marriages often do, this one led to a desertion by the *Page 591 
defendant of the petitioner immediately after the ceremony. The fraud she relies upon is the fact that the defendant promised to live with her, provide a home and admit her to all the rights and privileges of a wife, but at the same time had secretly resolved not to do so. While this, it seems, would be good ground for nullity under the general jurisdiction of the court if the marriage were unconsummated, it seems to me this marriage was consummated in theory and contemplation of law, that is, in the sense that consummation (sexual intercourse) preceded solemnization. It should here be asserted that the petitioner was pregnant by the defendant, and the marriage ceremony between the two made legitimate the son which was born two months and a half after the solemnization of their marriage.
Mr. Blackstone says that —
"A bastard by our English law is one that is not only begotten, but born, out of lawful matrimony. The civil and canon laws do not allow a child to remain a bastard, if the parents afterwards intermarry; and herein they differ materially from our law, which though not so strict as to require that the child shall bebegotten, yet it makes it an indispensable condition, to make it legitimate, that it shall be born, after lawful wedlock. * * * The main end and design of marriage, therefore, being to ascertain and fix upon some certain person, to whom the care, the protection, the maintenance, and the education of the children should belong; this end is undoubtedly better answered by legitimating all issue born after wedlock, than by legitimating all issue of the same parties, even born before wedlock, so as wedlock afterwards ensues; * * * our law has rendered it perfectly certain what child is legitimate, and who is to take care of the child. * * * Our constitutions guard against this indecency, and at the same time give sufficient allowance to the frailties of human nature. For, if a child be begotten while the parents are single, and they will endeavor to make an early reparation for the offense, by marrying within a few months after, our law is so indulgent as not to bastardize the child, if it be born, though not begotten, in lawful wedlock; for this is an incident that can happen but once, since all future children will be begotten, as well as born, within the rules of honour and civil society." 1 Bl. Com. [*]455, 456.
In Webster's New Int. Dic., p. 483, consummation is defined as "to complete by intercourse — said of marriage." Now, if the law, as it does, legitimates issue begotten, but not *Page 592 
born until after the parents marry, then, in the very nature of things, it would seem that by relation back it would, in effect, legitimate the sexual intercourse which was responsible for the pregnancy, which resulted in issue born, which it certainly legitimates.
It is to be observed that Vice-Chancellor Stevenson all the way through his opinion in Ysern v. Horter, supra, makes a marked distinction between a consummated and an unconsummated marriage, saying (at p. 201): "So far as the question has been discussed in reported American cases in other jurisdictions and by the text-writers, I find substantial agreement to the effect that an unconsummated marriage is little more than an engagement to marry — that there is no reason based on public policy why, for instance, a young girl should be tied forever to an escaped criminal simply because of a ceremony of marriage to which she was induced to consent by a fraudulent representation by her spouse that he was a person of good character, respectable standing in society and of large fortune. * * * Before the marriage is consummated the fraud is discovered. The parents intervene and the young girl disaffirms the marriage and promptly sued for its annulment. * * * Above all, it seems to me, it is important to ascertain whether the case presents merely an instance of the utterance of a few words expressive of a consent to a marriage, or such words have been followed by sexual intercourse, cohabitation and the creation of a status involving the interests of children and the preservation of the morals of society."
It may be observed that the language quoted applies with force to the case in hand, because the status which had been created in this case involved the interest of a child legitimately born to this couple, and that the marriage was preservative of the morals of society, and, I assert, of the couple themselves. This marriage must, in the circumstances, be regarded as a consummated marriage, although sexual intercourse took place before, and not after, the ceremony.
This wife and mother, and society generally, have the right to preserve the status of this son, to preserve his legitimacy, *Page 593 
but which legitimacy, if a decree of annulment be granted, would be destroyed so far as the common law is concerned.
I have not overlooked the fact that the Divorce act of 1907 (P.L. p. 474 § 1 subdiv. VI), provides that a decree of nullity of marriage shall not render illegitimate the issue of any marriage so dissolved, except such marriage is dissolved because either of the parties has a husband or wife still living, which shall be deemed void from the beginning and the issue illegitimate (which last provision does not apply here); nor the act of 1924 (P.L. p. 318), which provides that any child theretofore or thereafter born of a ceremonial marriage shall be the legitimate child of both parents, even though the marriage be thereafter annulled or declared void.
No child, who is begotten before, but born after, the solemnization of his parents' marriage, being legitimate by law centuries old, would like to have it said that he was legitimated by an arbitrary act, recently passed by the legislature; and to avoid this, the state and the public, being interested, I deem it to be my duty not to annul a marriage, when that result may be avoided, and thus place upon the innocent child the stigma of bastardy, save as it may be made legitimate by legislativefiat.
In Berus v. Berus, 146 N.Y. Supp. 554, the court had before it a case somewhat similar to the present one, and held that where, in an action to annul a marriage because defendant concealed the fact that he was an ex-convict, and falsely represented that he was a duly licensed attorney, the evidence showed that plaintiff's pregnancy, and not an misrepresentations, was the inducing cause for the marriage, the complaint will be dismissed. See, also, S.C., 83 N.Y. Mis. 624. And so here, the pregnancy of the petitioner, and not any false representations, was undoubtedly the inducing cause of the ceremony.
In my opinion it should take the strongest kind of a case of fraud to require the court to annul a marriage in the face of antenuptial pregnancy and subsequent delivery by the wife of a child born alive, and still living, of which the defendant *Page 594 
was the father. And the case at bar is not one falling within the rule which would constrain the court to grant the annulment prayed for.
The result reached is that this is not a case for annulment. The defendant, however, appears to have deserted the petitioner, and while a decree of nullity will be denied and the petition dismissed, it will be without prejudice to the bringing of a subsequent suit for divorce for desertion.