STANLEY J. TAUB, petitioner and appellant,

*v.*

MARGARET PANGBURN TAUB, defendant and respondent.

[Argued November 28th, 1916. Decided June 18th, 1917.]

Paragraph 6 of section 1 of the Divorce act of 1907 (*P. L. 1907 p. 474; Comp. Stat. p. 2022*) was not repealed or abrogated by the Marriage act of 1912 (*P. L. 1912 p. 306*), and that paragraph of the Divorce act

authorizes the annulment of a marriage at the suit of the husband when he was under the age of eighteen at the time of the marriage, and when the marriage had not been confirmed by him after arriving at such age, even though his parents consented to the marriage in the form prescribed by the Marriage act, and even though it be inferred from the evidence that, at the time of the marriage, he intended to disaffirm it upon reaching the age of eighteen.

On appeal from a decree of the court of chancery advised by Advisory Master Fort.

*Messrs. Michael T. & Hugh C. Barrett, Roy F. Anthony,* for the appellant.

*Messrs. Condict, Condict & Boardman,* for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

This is the husband's appeal from a decree dismissing his petition for the annulment of his marriage.

The appellant and respondent were married in this state on April 22d, 1915, by a minister of the gospel. At the time of the marriage, the appellant was under the age of eighteen years. He reached that age June 22d, 1915. The respondent was twenty years of age. The parties did not reside together after the marriage. The marriage was in no way confirmed after the appellant reached the age of eighteen. On July 10th, 1915, he filed his petition praying for the annulment of the marriage on the ground of his nonage at the time of the ceremony. The learned advisory master advised a decree dismissing the petition on the ground that the provisions of the Divorce act authorizing annulments of marriage because of nonage of the parties did not apply where the parents of the minor had consented to the marriage. It is from that decree dismissing the petition that this appeal is taken.

We are constrained to think that the decree was wrong.

The proceeding was pursuant to paragraph 6 of section 1 of the Divorce act (*P. L. 1907 p. 474; Comp. Stat. p. 2022*) which provides:

"Decrees of nullity of marriage may be rendered in all cases \* \* \* VI. At the suit of the husband when he was under the age of eighteen at the time of the marriage, unless such marriage be confirmed by him after arriving at such age."

It is argued that this provision of the Divorce act has been repealed.

We think not. It is not contended that it has been expressly repealed. But it is argued that it has been repealed because inconsistent with the provision in section 8 of the Marriage act (*P. L. 1912 p. 310*), which reads as follows:

"If any such male applicant for a license to marry shall be a minor under the age of twenty-one years, or any such female applicant under the age of eighteen years, such license shall not be issued unless the parents or guardian of such minor, if there be any, shall first certify under their hands and seals, in the presence of two reputable witnesses, their consent thereto; which consent shall be delivered to the assessor, registrar or clerk issuing the license. If the parents, or either of them, or the guardian of any such minor shall be of unsound mind, then the consent of such parent or guardian to the proposed marriage shall not be required," etc.

Since in the present case the parents of the appellant consented to the marriage in the form prescribed by the above section, it becomes necessary to determine whether or not paragraph 6 of section 1 of the Divorce act is by implication repealed *pro tanto,* to the extent of the alleged repugnancy, by the above-recited provision of the Marriage act. We think it was not.

At the outset it is to be remarked that a marriage license is not requisite to make a valid marriage. A marriage performed without a license for that purpose is as valid as one performed after securing the proper license. The provisions of the Marriage act with regard to licenses, both for minors and for others, are penal in their nature, section 10 providing that if any person having authority to solemnize marriages shall perform any marriage ceremony without the presentation of a license therefor, obtained in accordance with the provisions of the act, he shall be deemed guilty of a misdemeanor. *P. L. 1912 p. 311.* The burden is thus placed on the officer performing the marriage ceremony to see that the proper legal forms have been observed, but if such officer, through design or oversight, fails to require

the production of a marriage. license, the marriage, nevertheless, is a binding one. The license, therefore, appears to be merely an additional safeguard against hasty and ill-considered marriages and affects in no way the validity of the marriage.     .

Next, it is to be observed that the provisions of the Marriage act of 1912, requiring the consent of the parents of a minor before the issuing of a license, were not new legislation, but merely re-enactment of provisions already in the statutes. Legislation on this subject is first found in section 5 of "An act concerning marriages," passed March 4th, 1795 (*Pat. L. p. 159*), and the subsequent legislation, including that of 1912, is, in effect, a mere re-enactment of the Paterson act. It is also found in *P. L. 1866 p. 960*, section 1 of which provides that no person having authority to join persons together in the holy bonds of matrimony, shall marry any male under the age of twenty-one years, or female under the age of eighteen years, unless the parents or guardian shall be present and give their consent thereto, or until the minor applying to be married shall have produced a certificate in writing under the hand of the parents or guardian. And section 2 provides that if any such officer shall marry any minor without the consent of the parents or guardian, such officer shall, for every such offence, forfeit $300.

These provisions were incorporated in the revision of the Marriage act of 1874, found with various slight amendments in *Gen. Stat. p. 2003* §§ *3, 4, 5.*

In 1902, the Marriage act was again revised (*P. L. 1902 p. 490*), and the same provisions were incorporated, forming sections 3, 4 and 5. Up to the time of this latter act there was no requirement of a marriage license. In this revision, however, for the first time appeared provisions requiring the obtaining of a marriage license. Section 6, &c. The license was required only from non-residents. If such non-resident was a male under twenty-one years, or a female under eighteen, the license could not be issued except upon the consent of the parents or guardian. Section 13.

Thus the law stood until the act was revised in 1910. *P. L. 1910 p. 477; Comp. Stat. p. 3217.* In this revision it was made mandatory that a license be secured by residents as well as non-

residents.    Section 7 covered the marriage of minors and contained the same provisions with regard to the consent of the parents before the issuing of a license as is found in section 13 of the act of 1902.

So we find that the present Marriage act of 1912 (*P. L. 1912 p. 306*), although passed subsequent to the Divorce act of 1907, is merely a revision of substantially similar provisions in force long before the passage of that act.    It was not a new expression of legislative intent inconsistent with the earlier Divorce act, and under well-settled rules of statutory construction cannot be held to have worked an implied *pro tanto* repealer of that act.

The advisory master held that it was not the legislative intention to authorize the annulment of the marriage of a minor where the parents had given their consent in the statutory form.

But clearly this is not so.    It passed the Divorce act of 1907, with the provisions of the Marriage act before it relative to the consent of the parents to the marriage of minors.    There is nothing in the Divorce act itself to indicate a legislative intent to distinguish between marriages of minors where consent was given and those where no such consent was obtained.    After providing for the annulment of marriages at the suit of the wife when under sixteen at the time of the marriage, when not confirmed, paragraph 6 of section 1 of the act says that marriages may be annulled "*at the suit of the husband* when he was under the age of eighteen at the time of the marriage, unless such marriage be confirmed *by him* after arriving at such age."    The suit is to be brought at the option of the *husband,* and his right to an annulment is to be barred if *he* has confirmed the marriage after reaching the age of eighteen.    Speaking now without regard to the rights of the wife to an annulment in a proper case, the act places the responsibility on the husband; he alone can confirm the marriage after he becomes eighteen, and he alone can disaffirm it and begin the annulment suit.    His parents cannot confirm or disaffirm, nor can they apply for the annulment. With these facts in mind, it is clear that no act of the parents prior to the marriage can make it binding against the will of

the husband. They cannot deprive him of the right given him by statute, by signifying their consent to the marriage.

It seems plain, therefore, that when the legislature said that

"decrees of nullity of marriage may be rendered at the suit of the husband when he was under the age of eighteen at the time of the marriage, unless such marriage be confirmed by him after arriving at such age,"

it meant precisely what it said, and did not intend to limit decrees to marriages without the consent of the parents.

Such, evidently, was the view of Vice-Chancellor Stevens. In *Williams* v. *Brokow, 74 N. J. Eq. 561,* speaking with reference to the Divorce act of 1907, he said: "If hereafter any person shall be so ill-advised as to enter into a marriage with an infant under the prescribed age, he or she will do it with the knowledge that the relationship can be terminated at the mere will of the infant."

Such also seems to have been the opinion of Vice-Chancellor Stevenson. In *Titsworth* v. *Titsworth, 78 N. J. Eq. 47,* he thus speaks of the act of 1907:

"Under our statute, if there be issue, the same will be legitimate, and I think the view is a correct one, that in a case like this a decree of nullity operates practically to render void at the time of its rendition what, up to that time, was a valid but voidable marriage and thus amounts to a decree of divorce *a vinculo.* Young men under eighteen years of age are thus permitted to contract a 'trial marriage,' and if the wife be above sixteen years of age, it will be optional with the husband alone to affirm or disaffirm the marriage when he shall reach the age of eighteen years. \* \* \* But while I concur in the views of this sort of legislation indicated by Mr. Bishop (*1 Bish. Mar. & D.* §§ *564, 566*), even when innocent children may not be bastardized, the duty of the court, of course, is perfectly plain, viz., to enforce this statute in every case fairly brought within it without venturing to 'impugn the wisdom or the policy of the law.' "

It is argued that the appellant intended, at the time of the marriage, to disaffirm it upon reaching the age of eighteen, and

it is contended that to permit him to do so would work a fraud both upon the wife and the state.

But it is enough to say in disposing of this contention that the wife is presumed to have known the law, and the state by the statute has declared, in effect, that it does not care to enforce any public policy keeping marriages indissolvable contracted under the circumstances of the present case.

The decree below will be reversed, with costs, and the record remitted to the court of chancery for the entry of a decree of annulment of the marriage.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Gardner—13.