## ROSS v. BRYANT.

No. 14171—Opinion Filed July 24, 1923.

(Syllabus.)

**1. Marriage — Invalidity — Incapacity of Parties—Evasion of Statutory Inhibition by Marriage in Foreign State.**

Marriage is a social status which the state has a right to control. The public policy of the sovereign state as found by express legislative enactments, as to the competency of its citizens to enter into the relation, must be respected by them. Persons incapable of contracting such a relation in the state of their domicile by reason of want of age cannot successfully evade the controlling force of its laws by going to another jurisdiction where the law does not impose the inhibition.

**2. Same — Annulment — Infants — Action by Natural Guardian.**

Section 513, Comp. Stat. 1921, authorizes the district courts to annul marriages entered into by parties incapable from want of age or understanding. Where the custody and rearing of an infant was committed by its deceased parents to its grandfather, he can bring and maintain the action.

**3. Same — Validity of Marriage—Oklahoma Law Controlling.**

Where citizens of Oklahoma go to another state and there contract a marriage prohibited by the statutes of Oklahoma governing the public policy as to persons competent to enter into that status, and return forthwith to their place of domicile in Oklahoma, the validity of their marital status, when drawn in question in the courts of this state, will be determined by the law of Oklahoma, under the rule that the law, not of the place of contract, but of the domicile of the parties, governs.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action by James A. Bryant, as next friend of Dorothy Bryant Ross, a minor, to annul her marriage to Sherman Ross. Judgment for plaintiff, and defendant brings error. Affirmed.

E. D. Reasor and Carlton & Hendon, for plaintiff in error.

Wyatt & Waldrep, for defendant in error.

BRANSON, J. Dorothy Bryant, whose marital status is involved in this litigation, was born the 1st day of August, 1908, and was married to Sherman Ross in Bentonville, Ark., on the 22nd day of September, 1922. In her infancy her parents died. Her mother committed the custody, care, and rearing of the said Dorothy to her grandfather, James A. Bryant. Sometime in the summer of 1922, Sherman Ross abducted the said Dorothy from the custody of the said James A. Bryant, and took her to the state of Arkansas, for the purpose of marrying her. The residences of the said Sherman Ross and the said Dorothy Bryant were, at the time of and after said pretended marriage, in Pottawatomie county, state of Oklahoma.

After instituting a habeas corpus suit, and obtaining the custody of the said Dorothy, the said James A. Bryant, as grandfather and next friend of Dorothy Bryant Ross, a minor, instituted this suit in the district court of Pottawatomie county for the purpose of having decreed null and void the said marriage so entered into by them in the state of Arkansas, on the 22nd day of September, 1922.

The petition of the grandfather and next friend, in effect, alleges that the parents of the said Dorothy were both dead, that he was her grandfather and natural guardian, and that she has no legal guardian

appointed, and was incapable, by reason of her infancy, of entering into any legal or binding marriage contract, and that she had been abducted and kidnapped from the said James A. Bryant, by the said Sherman Ross, for the purpose of taking her into the state of Arkansas, and there entering into the said marriage.

To this petition the defendant, Sherman Ross, filed a demurrer, which was by the court overruled, and after answer filed, trial on the issue as to whether or not the marriage should be annulled was had to the district court, and judgment of said court entered annulling said pretended marriage. to reverse which this appeal is prosecuted by Sherman Ross.

It is admitted that the said Sherman Ross obtained a marriage license in due form, under the law of the state of Arkansas, and that said marriage was solemnized in full compliance with the statutes of that state. Various assignments of error are made, all of which may be properly summarized in (1) that the district court erred in overruling the demurrer to the petition, and (2) that the district court erred in entering the judgment annulling the marriage.

Under the first assignment. it is contended that James A. Bryant had no legal authority to institute and maintain this action.

Under the second assignment, it is contended that under the statutes of the state of Arkansas, pleaded by the defendant, the parties were capable of contracting marriage in that state and that the validity of the marriage at the place of its consummation determined its validity in Oklahoma, and that the court, therefore, was not justified in annulling the same.

In support of the first contention, section 513 of Comp. Okla. Stats. of 1921 is cited. This statute provides:

"When either of the parties to a marriage shall be incapable from want of age or understanding, of contracting such marriage, the same may be declared void by the district court, in an action brought by the incapable party or by the parent or guardian of such party * * *."

The contention is that the demurrer should have been sustained, for the reason that under this section the grandfather could not maintain the action.

The parents of Dorothy were both dead, and she had no guardian. It will be noted that she had been in the custody of her grandfather from her infancy. Section 214, Comp. Stats. of 1921, provides:

"The action (meaning on behalf of an infant) must be brought by his guardian or next friend. When the action is brought by his next friend, the court has power to dismiss it, if it is not for the benefit of the infant, or substitute the guardian of the infant, or any other person as the next friend."

The statute giving the right to maintain the action does not limit it to a suit to be brought by a parent or guardian. The statute provides that the infant may maintain the action. An infant, under said last quoted section, may maintain an action by the guardian or next friend. If instituted by a next friend, the district court has power to dismiss the action, if its purpose is not to the best interest of the infant. This action having been instituted by the next friend, her grandfather, and the person who stood from infancy in loco parentis to said minor, a court of chancery, in the exercise of its powers, certainly has jurisdiction where it is to the best interest of the minor, irrespective of a statute expressly authorizing the maintenance of such suit. Crouch v. Wartenberg (W. Va.) 104 S. E. 117; Clark v. Bayer, 32 Ohio St. 299, 30 Am. Rep. 593: Moritz v. Garnhart (Pa.) 7 Watts, 302 32 A. D. 763; Melcher v. Melcher (Neb.) 4 Am. L. Rep. 492. We are therefore of the opinion the demurrer was properly overruled.

The second contention is that, the marriage being in due form of law, and the parties being capable of entering into the marriage relation under the law of the state of Arkansas, the marriage was valid in that state, and therefore must be considered valid by the courts of Oklahoma.

We deem it unnecessary to discuss the statutes of the state of Arkansas, pleaded by the defendant, Sherman Ross, or the decisions of the courts of that state construing the same, as we do not think they govern the conclusion which should be reached in this case. Section 7488, Comp. Okla. Stats. 1921, provides, in effect, that marriage is a personal relation arising out of a civil contract, and may be entered into and abrogated, as provided by law.

Section 7490 of the same statutes provides, in effect, that every male under the age of 18 years, and every female under the age of 15 years, is expressly forbidden and prohibited from entering into the marriage relation. Section 1842. Comp. Stats. 1921, provides:

"Any person who takes away any female under the age of 15 years from her father, mother, guardian or other person having the legal charge of her person, without their consent, for the purpose of marriage or concubinage, is punishable by imprisonment in the penitentiary, not exceeding 5 years, or imprisonment in the county jail not exceeding 1 year."

Every sovereign state may determine the status of those having their domicile within its territory, and the law of the domicile of the parties governs the status of marriage. Kapigian v. Der Minassian (Mass.) 99 N. E. 264.

In the Estate of Stull (Pa.) 63 Am. St. Rep. 776, that court in part said:

"If a man and woman, citizens of the same state, and subject to an absolute statutory prohibition against entering into a marriage contract which is against good morals, leave their domicile and enter another state, where a marriage between them is not prohibited, and there marry, for the purpose of evading the law of their domicile, such marriage is void in the state having the prohibition. Persons domiciled in one state where marriage between them is absolutely prohibited, cannot evade its laws and policy by going to another state, and there marrying, and then returning to the home state to reside. Such marriage is void in the latter state."

Under the above-quoted Oklahoma statute defining marriage, it is something more than a civil contract. It is a civil status in which the state is vitally interested. The state of the domicile of the parties, being interested in the marriage status to be created, has a right to determine by legislative enactment the competency of the parties to enter into the marriage relation, their obligations each to the other during the continuance thereof, and the circumstances and conditions under which it may be terminated; and the state of the domicile of the parties intending to enter into the marriage relation has the exclusive right to prescribe all terms, conditions, and limitations which are binding upon the partes, although the law of the jurisdiction in which the marriage contract was entered into may have permitted the marriage within its borders. Brook v. Brook (Eng.) 11 Eng. Rep. 703; Roth v. Roth, 104 Ill. 35; State v. Fenn (Wash.) 92 Pac. 417; Lanham v. Lanham (Wis.) 117 N. W. 787; Kinney v. Commonwealth (Va.) 30 Grat. 858; State v. Tuttle, 41 Fed. 753; Succession of Gabisso (La.) 44 South. 438; Cunningham v. Cunningham (N. Y.) 99 N. E. 845.

In the case of Brook v. Brook, supra, it is said:

"There can be no doubt of the general rule that a foreign marriage valid according to the law of the country where it is celebrated, is good everywhere. But while the forms of entering into the contract of marriage are to be regulated by the lex loci contractus, the law of the country in which it is celebrated, the essentials of the contract depend upon the lex domicilii at the time of the marriage * * * and in which the matrimonial residence is contemplated. * * * But if the contract of marriage is such in essentials as to be contrary to the law of the country of domicile, and it is declared void by that law, it is to be regarded as void in the country of domicile, though not contrary to the law of the country in which it was celebrated."

To the same effect is the case of Wilson v. Cook, supra, and Lanham v. Lanham, supra.

We therefore conclude that, the pretended marriage falling within the express inhibitions of the law of the state of Oklahoma, the judgment of the district court of Pottawatomie county annulling the same should be affirmed.

JOHNSON, C. J., and KENNAMER, NICHOLSON, COCHRAN, and HARRISON, JJ., concur.