Doris A. Olcott, a married infant 16 years old, domiciled and resident in New York, drove with her husband to Bloomfield, New Jersey, to call on her sister. There the girl was taken into custody by the police who were on the look-out for her as a missing person. The next day she was charged by her father, in the Essex County Juvenile and Domestic Relations Court, with being a delinquent child in that she had run away from home ten weeks earlier and had remained away until the day of her arrest, and that she had married without her parents' knowledge or consent. At the hearing in the Juvenile Court, the truth of these specifications was shown and also that on occasions before the period mentioned in the complaint, Doris had remained away from home, had been a problem in school where her attendance was irregular, and that she had been placed in a church institution about a year earlier, and had remained there six months. A month or so before her arrest, she had stolen some jewelry in New York and had brought it to New Jersey and sold it. She frequented a bar room in New York where her husband was employed. On these facts, the Juvenile Court found that *Page 9 
Mrs. Olcott was a juvenile delinquent, and put her on probation for two years, on condition that she be placed in Our Lady of Grace Training School in Morristown, New Jersey, for the purpose of rehabilitation treatment. She has been brought before the Court of Chancery on writ of habeas corpus obtained by her husband.
The jurisdiction of the Juvenile and Domestic Relations Court over cases of juvenile delinquency may be found in R.S.9:18-12, as amended by P.L. 1946, c. 77. Juvenile delinquency is there defined either as the commission by a child under 18 years of age of an act which, if committed by an older person, would constitute a punishable offense, or else one of the following: habitual vagrancy, incorrigibility, immorality, knowingly associating with thieves and vicious persons, growing up in idleness, knowingly visiting gambling places or the like, idly roaming the streets at night, habitual truancy from school, or deportment endangering the morals, health or general welfare of the child. The first kind of juvenile delinquency is a single specific act; the second is a course of conduct evidencing the need of the state to intervene as parens patriae.
The nature of the court's jurisdiction was considered by the late Mr. Justice Swayze in Ex parte Newkosky, 94 N.J. Law 314.
"The proceedings authorized by the Juvenile Court Act are not proceedings by way of punishment but by way of reformation, education and parental care. * * * Children and minors are necessarily more restricted in their liberty of action than adults and I see no reason why children under the age of 16 years should not, in proper cases, receive such restraint and care from the public authorities as ordinarily they ought to receive from their parents. The act in this view is an attempt to substitute public control for parental control." After citing cases, he continues: "If the English Court of Chancery can thus act asparens patriae, surely the State of New Jersey may act in the same capacity through a juvenile court created by the legislature for the purpose." The statute, in an introductory section, states: "The principle is hereby recognized that children under the jurisdiction of the court are wards of the state subject to the discipline *Page 10 
and entitled to the protection of the state which may intervene to safeguard them from neglect or injury, and to enforce the legal obligations due to them and from them." R.S. 9:18-3.
The question arises what power the State of New Jersey, or its agency, the Juvenile Court, has over a resident of New York, who comes into our state on a lawful errand, with intent to return to her home in New York within a few hours. Undoubtedly, the state has jurisdiction if the infant commits in New Jersey an act forbidden by our laws. Mrs. Olcott, for instance, could have been charged with the possession of stolen goods and dealt with accordingly. But she was not so charged and her detention in Morristown under order of the court cannot be upheld on this basis. In re Mei, 122 N.J. Eq. 125. The gist of the complaint is that Mrs. Olcott is incorrigible. The commitment can be sustained, if at all, only because her general conduct was such as to evidence the need of restraint and discipline in order to effect her reformation.
The primary subjects of the state's jurisdiction of this character are children here domiciled. Over them its authority asparens patriae extends in fullest scope. The state also has a large jurisdiction over a child who is within its borders for a prolonged stay. Thus, where a child was sent by her mother to California for a six months' visit and while there, she became delinquent or dependent, the State of California had both authority and a duty to protect the child, and for that purpose to commit her to the custody of a suitable institution. Henn v.Children's Agency, 204 Fed. Rep. 766; 123 C.C.A. 216. Where a six-year-old child was brought into New Jersey "for six months on trial for adoption," Chancery had jurisdiction to determine a controversy over the child's custody. In re Williams, 77 N.J. Eq. 478.
See, also, Restatement, Conflict of Laws, §§ 117, 118
and 148; 43 C.J.S., Infants, § 4. I have no doubt that if a child of tender years strayed into New Jersey, or was here under the control of a lunatic, the state would have the power and duty to take care of the child, regardless of the length of time he had been here. The state's jurisdiction springs from the necessities of the case. But in *Page 11 
the absence of special circumstances, the State of New Jersey has no responsibility for, or power over, children resident in New York. The State of New York looks after them. New Jersey cannot interfere with a New York child who, accompanied by her natural protector, travels through the state by train or automobile, or comes here for two or three hours, unless some incident occurs during such short presence in the state which requires interference by the state. There was nothing in the present case to give the Juvenile Court jurisdiction over Mrs. Olcott — truancy from school, incorrigibility, running away from home, frequenting a saloon; none of them sufficed.
In order to present the question sharply, I have carefully omitted reference to certain facts that seem to me immaterial, but probably influenced the Juvenile Court to take jurisdiction. Mrs. Olcott was married only three days before her arrest. Until then, she lived with her parents in Bloomfield, and it was from their home that she ran away. Had she not married, her domicile would still be Bloomfield and her stay in New York would be considered temporary, and the Juvenile Court's jurisdiction would have been evident. But she did marry.
No facts appear to cast doubt on the marriage and, of course, without such facts, the marriage is taken as valid. Keller v.Linsenmyer, 101 N.J. Eq. 664. The consent of Doris' parents was not necessary to the validity of the marriage. Fodor v. Kunie,92 N.J. Eq. 301. When she attains the age of 18 years, if she be then a resident of New Jersey, she will have a right to avoid the marriage. R.S. 2:50-1. Scularekes v. Gullett, 106 N.J. Eq. 369.
But meanwhile she is a lawful wife. The marriage operated to emancipate her. Porch v. Fries, 18 N.J. Eq. 204; Rinaldi
v. Rinaldi, 94 N.J. Eq. 14; Commonwealth v. Graham (Mass.),31 N.E. Rep. 706; Cochran v. Cochran (N.Y.),89 N.E. Rep. 470. Her legal duty of obedience to her parents and their responsibility toward her and authority over her, ceased. Her husband is charged with the duty of caring for her.
By the marriage, Doris acquired the New York domicile of her husband. Floyd v. Floyd, 95 N.J. Eq. 661; Rich v. *Page 12 Rich, 109 N.J. Eq. 216. When she made her home with him there, she did what the law regards as a wife's duty. Howard v.Howard, 135 N.J. Eq. 55. She was just as much a resident of New York when brought before the Juvenile Court as if she had always lived in that state.
Nor is the circumstance material that her home was in New Jersey when she ran away. Running away was not an offense for which she could be deprived of her liberty. It was merely one incident which, added to others like frequenting a tavern in New York, enabled the court to evaluate her habits and character.
Counsel for the respondent, on the authority of In reFriedlander, 135 N.J. Eq. 71, urge that the questions here raised should not be decided in a summary way on habeas corpus
and that relief should be had by appeal to the Supreme Court.R.S. 9:18-37. But we are concerned with an infant who has not been allowed to consult with the attorney whom her husband employed. It would be improper in this case to avoid a determination on the merits. The infant will be discharged because of a lack of jurisdiction in the Juvenile Court.