32 N.J. Super. 599 (1954)
108 A.2d 882
IN RE ANONYMOUS.
Superior Court of New Jersey, Chancery Division.
Decided March 31, 1954.
*600 Messrs. Herr & Hartman, attorneys for plaintiffs (Mr. Morris N. Hartman, appearing).
Mr. Irving W. Rubin, attorney for defendant.
GOLDMANN, J.S.C.
This action was originally brought by the father of a 14-year-old minor, in the father's individual right and also as guardian ad litem of his daughter, to annul her 13-day-old marriage, on the ground that the marriage was effected by fraud and duress without the free consent of the minor, and on the alternate ground of non-age. The court, with the consent of counsel, took proofs as to non-age only. The evidence disclosed the following factual situation:
On July 31, 1946 a final decree was entered in our former Court of Chancery (Docket 154/673) wherein the mother and father of the infant plaintiff were divorced from the bond of matrimony. By the decree nisi custody of the infant was awarded to the mother. Following the divorce the mother remarried. She now has two additional children by *601 her present husband and resides in the City of New Brunswick. The father has remarried and he and his present wife also live in New Brunswick. No children were born of the latter marriage.
For the past few years the infant plaintiff has been regularly visiting with her father, spending alternate weekends at his home. The last visit took place on Saturday and Sunday, June 20-21, 1953. On Sunday evening the father, as was his custom, drove his daughter to the home of her mother. At that moment the father was in complete ignorance of events which had taken place concerning his daughter in the previous two months. For on or about Mother's Day in May 1953 the mother had consented to the infant's engagement to the defendant herein, a 19-year-old boy who was then in the service of the U.S. Navy, stationed at Charleston, South Carolina. He had given the young girl an engagement ring. Thereafter the infant was informed by her mother that she could marry, and this without the father's consent, provided she became pregnant. The mother permitted the defendant to visit with the infant in her home, without any supervision, thus providing the opportunity to engage in the sexual relations which took place. The mother then made plans for the marriage to be performed by a county judge on the pretext that the infant child was pregnant. An announcement of the proposed marriage was prepared for insertion in the local newspaper and such announcement was published on Monday, June 22, 1953, the afternoon following the father's return of his daughter to the mother's home. He first became aware of what was happening when he read the announcement in the newspaper that day.
The father took immediate steps to prevent the marriage. A conference was arranged the following afternoon, Tuesday, June 23, 1953, in the chambers of the county judge, at which time there were present the mother, father, two county probation officers, the prosecutor and the county judge. The father testified that at the close of the conference his understanding was that another conference would take place a few days hence and that before such conference took place *602 attempts were to be made to dissuade the youngster from the proposed marriage. The following morning, June 24, 1953, the father engaged his present attorneys to file an action on his behalf for custody of the infant child and for an injunction against the mother's proceeding with her plans for the marriage of the infant. The entire day was devoted to the preparation of a complaint and supporting affidavits, including an order to show cause and appropriate orders for the arrest of the infant and for her production into court on the return date of the order to show cause. The complaint was actually filed on the morning of June 25, 1953, at Trenton, and the aforementioned orders were secured. Service of the complaint and of the orders were made on the mother and the defendant herein the following day, June 26, 1953. It was then disclosed that a marriage had been performed between the infant and the defendant on the afternoon preceding the filing of the complaint, without the knowledge of the father. This action for annulment was thereupon instituted.
The infant child was placed in the custody of her father by the ad interim orders of this court in the custody action on June 26, 1953, two days following the infant's marriage, and the infant has been in the father's custody down to the present time. On the continued return day of the order to show cause in the custody action the infant was privately examined by the court and a transcript of that examination has been introduced in evidence in this action. I have taken notice of and have fully examined the file in the custody action. Since my determination in this matter and prior to the writing of this opinion I signed a consent judgment in the custody action awarding custody of the infant to the father.
The evidence in this case further discloses that following the placing of the custody of the infant with the father three separate pregnancy tests were performed at the Monmouth Memorial Hospital at Long Branch, New Jersey. The resident pathologist of that hospital appeared as a witness and produced the records of the hospital, from all of which it appears that the three tests were performed at different *603 periods following the marriage, and that all the tests proved negative as to pregnancy.
The infant testified that she was upset and all "mixed up" in mind and emotions at the time of the marriage. She did not know whether she wanted to get married or not and was acting under her mother's influence. It is evident that she did not clearly understand all that took place at the time of the marriage. There has been no physical access between her and the defendant since the day following the marriage.
At the close of the summer of 1953 the father obtained an order in the custody proceedings permitting him to enter his child in a private girls' school in Pennsylvania, and the infant was enrolled in that school in September of that year. All reports indicate that she is doing well and that she is happy. She now realizes that the marriage was a mistake. I am satisfied that her conclusion is the result of a clear and intelligent consideration of what has occurred; that she has not been influenced in this decision, and that she now desires that the marriage be annulled.
The defendant filed an answer in which he admitted the allegations of the complaint, including the allegations which charged the alleged fraud and duress. The answer is under oath and further discloses that he had been advised by the mother that her daughter was pregnant and that he would have to proceed with the marriage. Defendant appeared in court with his attorney but did not take the stand. Counsel stipulated that he appeared by consent of defendant and his mother; that if annulment were granted by the court it would be best for all concerned, and hence no defense would be made.
The infant was born on March 18, 1939. On the day of her marriage (June 24, 1953) she had attained the age of 14 years, 3 months and 6 days. The annulment action was instituted when she was 14 years, 3 months and 19 days old, and on the date of the final hearing she had attained the age of 15 years and 13 days.
The infant having elected to disaffirm her marriage and to have the same annulled, it remains for the court to determine *604 whether she is entitled to a judgment of nullity or whether the relief is proscribed until she shall have attained the age of 18 years.
Research discloses but one published decision squarely on point, Palmer v. Palmer, 80 A. 486, 487 (Ch. 1911, not officially reported), decided by Vice-Chancellor Howell. In that case the petitioner was the husband. He was under 18 at the time of the marriage as well as at the time of the institution of the action to annul it. The action had been brought under the 1907 Divorce Act (L. 1907, c. 216, § 1). The vice-chancellor, in sustaining a demurrer to the petition, held that "the common law rules regulate the controversy in this case," and that the "common law rule manifestly did not permit a dissent from the infantile marriage until the dissenting party had reached the age of consent."
The Palmer opinion took note of a dictum to the contrary in Titsworth v. Titsworth, 78 N.J. Eq. 47, 49 (Ch. 1910), in which Vice-Chancellor Stevenson, in dealing with a husband's suit, said that it was "optional with the husband alone to affirm or disaffirm the marriage when he shall reach the age of 18 years or at any time before." (Italics supplied.) And in the case of Hess v. Kimble, 79 N.J. Eq. 454 (Ch. 1911) Vice-Chancellor Leaming dealt with a suit for annulment brought by a husband through his next friend on the ground that he was under the age of 18 at the time of the marriage. He was still under 18 years of age when he brought the action. It was dismissed on the ground that neither party was a bona fide resident of New Jersey at the time the petition was filed. No comment was made on the fact that the action was brought before the petitioner attained the age of 18 years, a significant omission if, as Vice-Chancellor Howell thought, no cause of action had yet accrued. See also the dicta in Taub v. Taub, 87 N.J. Eq. 624, 629 (E. & A. 1917); Riesen v. Riesen, 105 N.J. Eq. 144, 145 (Ch. 1929); Scularekes v. Gullett, 106 N.J. Eq. 369, 372 (Ch. 1930), and In re Olcott, 141 N.J. Eq. 8, 11 (Ch. 1947). In none of these cases was the present question directly raised or analyzed.
*605 The jurisdiction of our courts to annul a marriage on the ground of non-age is purely statutory. The portion of the statute, applicable to this action, and the cognate portion relating to actions brought by a husband, are as follows:
"Judgments of nullity of marriage may be rendered in all cases, when:

* * * * * * * *
"e. The demand for such a judgment is by the wife and she was under the age of 18 years at the time of the marriage, unless such marriage be confirmed by her after arriving at such age.
"f. The demand for such a judgment is by the husband and he was under the age of 18 years at the time of the marriage, unless such marriage be confirmed by him after arriving at such age. * * *" N.J.S. 2A:34-1(e) and (f).
These provisions have their source in the Divorce Act of 1907 (L. 1907, c. 216, § 1) and have remained unchanged except that in the 1907 act the wife's age of consent was fixed at 16 years. It was raised to 18 years by L. 1928, c. 65, § 1.
Prior to the year 1907 we had no similar statute dealing with annulment for non-age. L. 1907, c. 216, § 1, established the cause of action. At the common law the "age of consent" was 12 years for the female and 14 years for the male. But inasmuch as no canonical impediment was involved in marriages below those respective ages and above the age of seven, such marriages were voidable rather than void. Elliot v. Gurr, 2 Phill. Ecc. 16, 19, 161 Eng. Rep. 1064. Vice-Chancellor Howell was of the opinion, based upon statements of law writers of another generation rather than on any decided cases, that an action could not be brought to annul such a marriage until the plaintiff reached the age of consent (12 or 14, respectively, under the common law, and 16 or 18, respectively, under the 1907 act). Assuming the correctness of his opinion, the rule was apparently predicated upon the policy of the ecclesiastical courts to encourage, rather than to discourage such early marriages, and amounted to a denial that any cause of action could arise before plaintiff's attainment of the canonically fixed age of consent.
*606 It was Vice-Chancellor Howell's view that the 1907 statute was adopted with the common-law conception in mind, and that the Legislature intended to adopt the common-law rule, merely advancing the respective ages of consent from 12 to 16 for the wife and from 14 to 18 for the husband. I am of the opinion that he mistook the legislative intent, and that his construction of the statute defeats the legislative purpose.
The 1907 revision was drafted by and based upon the report of the Commissioners appointed by Governor Edward C. Stokes to attend the Uniform Divorce Law Congress at Washington in 1906, namely, Judge William M. Lanning, Vice-Chancellor John R. Emery and the Reverend Henry Collin Minton. Vice-Chancellor Emery was a leading figure in the committee of the National Congress on Uniform Divorce Laws which drafted the recommendations, as well as in the debate on the recommended uniform act; he championed the non-age provisions which were adopted by the Congress and which were included verbatim in our 1907 revision (L. 1907, c. 216). In their report, to be found in the State Library (974.90, D618, 1907) the New Jersey representatives, referring to the proposed addition of non-age as a ground for annulment, said:
"In preparing the revised New Jersey statute, the causes for annulment of marriage and for absolute divorce from the bonds of matrimony remain, therefore, without change with one exception  this is the addition of a provision for annulment of marriages contracted under the age of sixteen for girls and the age of eighteen for boys, which may be annuled at the suit of the injured party only, unless confirmed by such party arriving at these respective ages. This provision was adopted at the adjourned session of the Congress, and the reasons for it are shortly given in the following extract from the address:
`Each State fixes by statute or decision some limit of age, and these ages fixed by the act, while raising the limits fixed by marriages at the common law, are not higher than the age fixed by statutes in many States, protecting females against consent to intercourse. The social conditions now generally existing through the Union do not seem to be such as to call for the encouragement of marriages at an earlier age, and the evils likely to result generally from such immature marriages seem to require their absolute prohibition.'" (at page 5)
*607 An examination of the Proceedings of the Adjourned Meeting of the National Congress on Uniform Laws (1907)  the meeting was held at Philadelphia on November 13, 1906  to be found in the State Library (347), pp. 51-56, containing the debate on the subject, and the record of the adoption of these provisions in the proposed uniform divorce law to be recommended for adoption by the several states, discloses that there was no intent to adopt the old ecclesiastical rules, whatever they may have been, or to condition the remedy upon the attainment of the age of consent. The debate centered on the question of the age at which the parties could be considered capable of consenting to the marriage itself. A strong argument was made that the consenting age of the female should be fixed at 18 rather than 16, for her protection, on the theory that a girl under 18 is incapable of intelligent choice, and that fixing the age at 16 amounts to an arbitrary and unjustified discrimination between girls over and under that age but equally incompetent to understand the solemn obligations of marriage. The debate involved the consideration of the law, whether statutory or case law, of the several states, not of England.
In reaching the result that the petitioner in the Palmer case could not institute an action to annul the marriage solely because of his non-age, prior to his reaching the age of consent (18), Vice-Chancellor Howell construed the "unless" clause of the statute by reversing the order of the sentence to read: "unless the marriage be confirmed by the husband [wife] after arriving at the age of 18, he [she] may on arriving at that age have a decree of nullity." (Brackets inserted.) The 1907 law clearly granted the right to annul "in all cases when * * *," and I find nothing in the non-age provision which diminishes that right except confirmation of the marriage after arriving at the age of consent. I do not read the statute as disabling the party affected, but rather as enabling such party to be relieved of the existing status.
Consideration of the question of disaffirmance and the paraphrase (by transposition) of the statute in the Palmer *608 case were unwarrantedly and needlessly imported elements, quite outside the purpose and beyond the intent of the statute. The clause "unless such marriage be confirmed by her after arriving at such age," is not a condition precedent to the right to annul, but merely an admonition to the party of non-age at the time of the marriage that although the fact of being under age afforded the right to an annulment, confirmation of the marital relationship after becoming of age would result in a loss of the statutory right.
Under Vice-Chancellor Howell's construction of the statute we would have the anomaly of the establishment of a cause of action as of the date of the marriage, with a postponement of the right to enforce it until the non-aged party attains the statutory age of consent. True, such a conception is not new to our law. The cause of action for divorce on the ground of extreme cruelty under the Blackwell Act (L. 1923, c. 187; N.J.S. 2A:34-2(c)), while arising upon the date of the delictum, could not be sued upon until after six months. Soos v. Soos, 14 N.J. Misc. 381, 185 A. 386 (Ch. 1936). The postponement of the right to bring an action was designed as a "cooling-off" period. But such an intent to postpone the remedy cannot reasonably be read into the non-age provisions of the statute, inasmuch as the non-aged party is legally incapable of entering into a binding contract of marriage, and the purpose of the statute is to discourage child marriages and to protect children from the consequences which a binding marriage involves.
As already noted, the Commissioners who framed the uniform act were not concerned with the old ecclesiastical conception that child marriages should be preserved so far as possible. The consensus of opinion was to the contrary, based upon the statutory or case law of the several states reflecting the modern view that children should be afforded the utmost protection.
The prevailing rule in the United States was and is that one who marries before the age of consent may disaffirm the marriage before arriving at that age and sue at once for its annulment. 38 C.J., Marriage, § 12, pp. 1283, 1285, notes *609 4 and 16; 35 Am. Jur., Marriage, § 104, p. 246; 3 Nelson, Divorce and Annulment (2d ed.), § 31.58, p. 346. The recommendations of the Commissioners, and their approval of the provisions of the proposed legislation, which our 1907 act adopted without change of language, must have been based upon a thorough familiarity with the American law on the subject.
Such was the background against which our Legislature enacted the 1907 revision of the Divorce Act. The ecclesiastical law is not part of our law, except to the extent that our cases have followed its ideas as being equitably acceptable in the absence of statute. See cases cited in 1 Herr, Marriage, Divorce and Separation (1st ed. 1938), § 2, p. 30, and 10 N.J. Practice (Herr, Marriage, Divorce and Separation) (1950), § 3, p. 6. The non-age cause of action was created by the 1907 act which, by its terms, established the cause of action as arising upon the date of the marriage.
Accordingly, I find nothing in the statute which evidences an intention to prevent a spouse from disaffirming before attaining the age of 18 or from seeking relief by way of nullity while still under that age. If a contrary purpose had been intended it would have been clearly expressed by the Legislature.
Courts are "enjoined to interpret and enforce the legislative will as written, and not according to some supposed unexpressed intention." The legislative intent is the ultimate control in construing a statute. Hoffman v. Hock, 8 N.J. 397, 409 (1952). To deny relief here would be a frustration of what I consider the true legislative intention and a failure to render equity in the face of express statutory language.
Other objectionable results would ensue from a denial of jurisdiction. In this case the child was only 14 when she married defendant, and she separated from him two days later. This action was instituted less than two weeks later. She has just passed her fifteenth birthday, and is attending an excellent boarding school, where she is happy and responsive. She enjoys normal and healthy contacts with girls *610 of her own age. While she will no doubt carry the scars of her unhappy experience for a long time, their effect can be and is being minimized by reason of her present wholesome environment. But the realization that she is still married to the defendant does not contribute to her recovery of a normal emotional state. The court should do whatever it can to allow her to forget, as though the marriage had never occurred. It is essential for her well-being that the marriage be annulled.
Fortunately, there is no issue of the marriage, but if the marriage is not annulled now  if the infant has to wait for three years before she can institute her action  what of the consequences? Until the marriage is annulled she is emancipated from the control of her parents, who cannot legally keep her away from her husband if he insists upon his marital rights. It is conceivable that defendant may again press his suit and that she may succumb  she is only a child, as yet not completely readjusted. Is she not to be protected against such a contingency, and the consequent likelihood of conception? Only the court can afford her the necessary protection, and that only by annulling the marriage.
There are other cogent reasons for the immediate annulment, all having to do with the child's welfare. For example, as long as the marriage subsists her social contacts with boys and girls of her own age will be inhibited or abnormal, whether the fact of her marital status be known or not. If known she will be a social misfit; if not, her apprehension that the marriage may be disclosed will have much the same effect. Nor is it easy to believe that any good school or college would be willing to have her as a student.
I conclude that our statute creates a cause of action for annulment on the ground of non-age as of the date of the marriage, and that such action can be brought by the underaged spouse before attaining the age of 18. There will be a judgment of nullity.
Having granted the annulment, it is unnecessary to decide whether the father has a standing in his own right to ask the same relief.