SHIRLEY WILKINS, OTHERWISE SHIRLEY ZELICHOWSKI, PLAINTIFF-APPELLANT, v. STEPHEN E. ZELICHOWSKI, DEFENDANT-RESPONDENT.

Argued February 17, 1958—Decided March 31, 1958.

*Mr. H. Frank Pettit* argued the cause for the appellant.

The opinion of the court was delivered by

JACOBS, J. The Appellate Division, in an opinion reported at 43 *N. J. Super.* 598 (*App. Div.* 1957), affirmed the Chancery Division's dismissal of the plaintiff's complaint which sought an annulment of her marriage to the defendant. We granted certification under *R. R.* 1:10–2.

The plaintiff and the defendant were domiciled in New Jersey as were their respective parents. They ran away from New Jersey to marry and they chose Indiana because they believed "it was the quickest place." The Indiana statutes provide that "females of the age of sixteen" are capable of marriage although they also provide that where the female is within the age of 18 the required marriage license shall not be issued without the consent of her parents. See *Burns, Indiana Statutes Annotated,* §§ 44–101, 44–202. After their marriage in Indiana on April 23, 1954 the plaintiff and defendant returned immediately to New Jersey where they set up their home. On February 22, 1955 the plaintiff bore the defendant's child. On April 22, 1955 the defendant, having been convicted on several independent charges of automobile theft, was sent to Bordentown Reformatory where he was still confined at the time of the hearing in the Chancery Division. On January 4, 1956 the plaintiff filed her annulment complaint under *N. J. S.* 2A:34–1(e) which provides that a judgment of nullity may be rendered on the wife's application upon a showing that she was under the age of 18 years at the time of her marriage and that the marriage has not been "confirmed by her after arriving at such age"; the statute also provides that where a child has been born there shall be no judgment of nullity unless the court is of the opinion that the judgment "will not be against the best interests of the child." Although the defendant was duly served he did not file any answer and he chose not to contest the plaintiff's proceeding.

The plaintiff's evidence adequately established that she was 16 years of age when she was married and that she did not confirm her marriage after she had reached 18 years of age and the Chancery Division expressly found that an

annulment would be "for the best interests of the child"; nevertheless it declined to grant the relief sought by the plaintiff on the ground that the marriage was valid in Indiana and should therefore, under principles of the conflict of laws, not be nullified by a New Jersey court because of the plaintiff's nonage. In reaching the same result the Appellate Division recognized that the Chancery Division had ample power to nullify the Indiana marriage of the New Jersey domiciliaries (*N. J. S.* 2A:34–1(e); *Scularekes v. Gullett,* 106 *N. J. Eq.* 369, 371 (*Ch.* 1930); *In re Olcott,* 141 *N. J. Eq.* 8, 11 (*Ch.* 1947)) but expressed the view that comity dictated that it should not take such action unless there was an imperative New Jersey policy (which it did not find) against marriages of 16-year-old females. See 43 *N. J. Super.* at *page* 603. *Cf.* 2 *Beale, Conflict of Laws* § 129.1 (1935); *Goodrich, Conflict of Laws* 417 (*3d ed.* 1949); *Fleming, "Choice of Law in Nullity Proceedings,"* 23 *Austr. L. J.* 458 (1949); *Jackson, "Annulment and the Choice of Laws,"* 27 *Can. B. Rev.* 173 (1949); *Kingsley, "The Law of Infants' Marriages,"* 9 *Vand. L. Rev.* 593, 604 (1956); *Taintor, "Marriage in the Conflict of Laws,"* 9 *Vand. L. Rev.* 607, 624 (1956); *Mann, "The Royal Commission on Marriage and Divorce,"* 21 *Modern L. Rev.* 1, 12 (1958).

In 1905 the Court of Chancery had occasion to deal with an application by a New Jersey resident for annulment of an English marriage entered into when she was 14 years of age; the court expressed the view that there could be "no doubt" as to its jurisdiction. After reviewing the plaintiff's evidence of fraud and duress and pointing out that while our law is interested in the permanency and inviolability of the marriage contract "it is equally interested in having it entered into by persons of competent age and judgment," it awarded a decree of annulment. See *Avakian v. Avakian,* 69 *N. J. Eq.* 89, 100 (*Ch.* 1905, per Pitney, V. C.), affirmed 69 *N. J. Eq.* 834 (*E. & A.* 1906). In 1907 the Legislature revised the statutory provisions relating to annulments (*L.* 1907, *c.* 216, *p.* 474); it directed that a decree of nullity could be rendered not

only in the case of a bigamous or incestuous marriage (see *L.* 1902, *c.* 157, *p.* 502) but also in any case, among others, where the wife sought the decree and established that she was under 16 at the time of the marriage and had not confirmed it after attaining such age. The history of this enactment was discussed in *In re Anonymous,* 32 *N. J. Super.* 599, 608 (*Ch. Div.* 1954), where Judge Goldmann indicated that its clear purpose was "to discourage child marriages and to protect children from the consequences which a binding marriage involves." See *Gibbs v. Gibbs,* 92 *N. J. Eq.* 542, 547 (*Ch.* 1921). See also *Report of the Commissioners Appointed to Attend the Uniform Divorce Law Congress as Delegates for the State of New Jersey* which sets forth the reasons expressed by the draftsmen of the 1907 revision:

"In preparing the revised New Jersey statute, the causes for annulment of marriage and for absolute divorce from the bonds of matrimony remain, therefore, without change with one exception— this is the addition of a provision for annulment of marriages contracted under the age of sixteen for girls and the age of eighteen for boys, which may be annuled at the suit of the injured party only, unless confirmed by such party arriving at these respective ages. This provision was adopted at the adjourned session of the Congress, and the reasons for it are shortly given in the following extract from the address:

'Each State fixes by statute or decision some limit of age, and these ages fixed by the act, while raising the limits fixed by marriages at the common law, are not higher than the age fixed by statutes in many States, protecting females against consent to intercourse. The social conditions now generally existing through the Union do not seem to be such as to call for the encouragement of marriages at an earlier age, and the evils likely to result generally from such immature marriages seem to require their absolute prohibition.' "

In 1928 the Legislature strengthened its policy by increasing the wife's age requirement and providing that the wife could obtain a decree of nullification "when she was under the age of eighteen years at the time of the marriage, unless such marriage be confirmed by her after arriving at such age." See *L.* 1928, *c.* 65, *p.* 139.

The vigor of New Jersey's policy against marriages by persons under the prescribed age is evidenced not only by

the breadth of the statutory language but also by the judicial decisions. In *Taub v. Taub*, 87 *N. J. Eq.* 624 (*E. & A.* 1917), the husband sought an annulment on the ground that his marriage took place when he was under 18 years of age and he did not confirm it when he reached that age. The Court of Chancery declined to grant the annulment because the parents of the husband had consented to the marriage, but this was reversed by the Court of Errors and Appeals. Justice Trenchard, in an opinion for the entire court, pointed out that the legislative provision which authorizes the issuance of marriage licenses to underage persons who have the consent of their parents (now *R. S.* 37:1–6) was in effect when the 1907 statute (*L.* 1907, *c.* 216, *p.* 474) was passed; that the statute meant precisely what it said when it provided for nullity actions by persons who were under the prescribed age at the time of the marriage; and that the Legislature had in effect declared that "it does not care to enforce any public policy keeping marriages indissolvable" when they are contracted under the circumstances presented to the court. In *Scularekes v. Gullett, supra,* Vice-Chancellor Fielder granted a New Jersey wife's application to annul a marriage entered into by her in New York when she was under the age prescribed in the New Jersey statute; he noted that underage marriages are declared by our statute "to be repugnant to our public policy," that he found "nothing in our statute which discloses a legislative intent that it shall be applicable only to marriages contracted in this state," and that it is "fundamental law that each state has the right to determine the marital status of its citizens under its laws." See also *Capossa v. Colonna,* 95 *N. J. Eq.* 35, 37 (*Ch.* 1923), affirmed 96 *N. J. Eq.* 385 (*E. & A.* 1924); *Jimenez v. Jimenez,* 93 *N. J. Eq.* 257, 259 (*Ch.* 1922). *Cf. In re Olcott, supra,* 141 *N. J. Eq.* at *page* 11; *Herr, Marriage, Divorce and Separation,* 11 *N. J. Practice* 213 (*2d ed.* 1950).

It is undisputed that if the marriage between the plaintiff and the defendant had taken place here, the public policy of New Jersey would be applicable and the plaintiff would

be entitled to the annulment; and it seems clear to us that if New Jersey's public policy is to remain at all meaningful it must be considered equally applicable though their marriage took place in Indiana. While that State was interested in the formal ceremonial requirements of the marriage it had no interest whatever in the marital status of the parties. Indeed, New Jersey was the only State having any interest in that status, for both parties were domiciled in New Jersey before and after the marriage and their matrimonial domicile was established here. The purpose in having the ceremony take place in Indiana was to evade New Jersey's marriage policy and we see no just or compelling reason for permitting it to succeed. See *Cunningham v. Cunningham,* 206 *N. Y.* 341, 99 *N. E.* 845, 43 *L. R. A., N. S.,* 355 (1912); *Mitchell v. Mitchell,* 63 *Misc.* 580, 117 *N. Y. S.* 671 (*Sup. Ct.* 1909); *Sirois v. Sirois,* 94 *N. H.* 215, 50 *A. 2d* 88 (1946). *Cf. Ross v. Bryant,* 90 *Okl.* 300, 217 *P.* 364 (1923).

In the *Cunningham* case [206 *N. Y.* 341, 99 *N. E.* 848] the New York Court of Appeals annulled a marriage between New York residents who married outside the state to evade New York's age policy; the court expressed the view that the marriage was "repugnant to our public policy and legislation, and in view of the fact that the parties were, and ever since have been, residents of this state, our courts have the power to relieve the plaintiff by annuling the marriage." In the *Mitchell* case [63 *Misc.* 580, 117 *N. Y. S.* 676] the New York Supreme Court annulled a Canadian marriage of New York residents because the plaintiff was under the age of 18 at the time of her marriage; Justice Wheeler found that there was ample power in the New York court to annul the marriage though it was valid under Canadian law; in the course of his opinion he stressed that the New York Legislature had "seen fit in its wisdom to discourage marriages contracted by immature persons" and had provided for "the annulment of such marriages under certain circumstances and conditions," and he concluded that there would be neither reason nor justification for judicially permitting New York residents to

evade the legislature's age policy and defeat annulments contemplated by it.

In the *Sirois* case, domiciliaries of New Hampshire were married in Massachusetts and returned to New Hampshire to live. In granting the plaintiff's application for annulment because of her nonage the New Hampshire Supreme Court applied its own statute and had this to say:

" 'The marriage status both in its creation and destruction is of great importance not only to the individual, but also to the state where he makes his home.' *Goodrich, Jurisdiction to Annul a Marriage,* 32 *Harv. Law Rev.* 806, 812. And while the law of the place where the ceremony is performed has an interest in the validity of the ceremony, it has none 'in the intrinsic validity of the status, unless the status is to be enjoyed there.' *Taintor, What Law Governs Status of Marriage,* 19 *B. U. Law Rev.* 353, 368.

The authority of a state to decide what marriages it will recognize is beyond question, and if the parties to a marriage contract are both domiciled in a particular state and marry in another state, intending to return, and do return, to the state of their domicile to make a home there, the domiciliary state has a substantial interest in the marriage (19 *B. U. Law Rev.* 367), and if it is repugnant to the public policy of the domiciliary state, that state, through its courts, has the power to annul it. *Cunningham v. Cunningham,* 206 *N. Y.* 341, 99 *N. E.* 845, 43 *L. R. A., N. S.,* 355. 'This domiciliary policy may be found in the common law or in a local statute.' 2 *Beale, Conflict of Laws,* 678."

 The Appellate Division cited *McDonald v. McDonald,* 6 *Cal. 2d* 457, 58 *P. 2d* 163, 104 *A. L. R.* 1290 (1936) and *Payne v. Payne,* 121 *Colo.* 212, 214 *P. 2d* 495 (1950) (see also *Kingsley, supra,* 9 *Vand. L. Rev.,* at 604), which reached results contrary to those arrived at in the *Cunningham, Mitchell* and *Sirois* cases; they may be distinguishable because of the local statutory provisions which governed them, but in any event they are not controlling and we are not persuaded by their reasoning. We are not here concerned with a collateral attack on an Indiana marriage or with a direct attack on an Indiana marriage between domiciliaries of Indiana or some state other than New Jersey. We are concerned only with a direct and timely proceeding, authorized by the New Jersey statute

(*N. J. S.* 2*A* :34–1(*e*) ), by an underage wife for annulment of an Indiana marriage between parties who have at all times been domiciled in New Jersey. We are satisfied that at least in this situation the strong public policy of New Jersey (see *Restatement, Conflict of Laws* § 132(*b*), comment *b*) requires that the annulment be granted. The annulment will not render the plaintiff's child illegitimate (*N. J. S.* 2*A* :34–20) and, as the Chancery Division found, it will be for his best interests. The annulment will also serve the plaintiff's best interests for it will tend to reduce the tragic consequences of her immature conduct and unfortunate marriage. The Legislature has clearly fixed the State's policy in her favor and has granted her the right to apply for a judgment nullifying her marriage; we know of no considerations of equity or justice or overriding principles of the law which would lead us to deprive her of the relief she seeks under the circumstances she presents. See *Taintor, supra,* 9 *Vand. L. Rev.,* at 624.

Reversed.

HEHER, J. (dissenting). I am not of the opinion that judgment of nullity under *N. J. S.* 2*A* :34–1, "will not be against the best interests of the child"; and so I would affirm the judgment of dismissal of the complaint for annulment of the marriage. Compare *Caruso v. Caruso,* 104 *N. J. Eq.* 588 (*Ch.* 1929).

*For reversal*—Chief Justice WEINTRAUB, and Justices WACHENFELD, JACOBS and PROCTOR—4.

*For affirmance*—Justices HEHER and BURLING—2.